CHICAGO RESEARCH AND TRADING, Respondent, v NEW YORK FUTURES EXCHANGE, INC., et al., Appellants.

First Department, January 26, 1982

APPEARANCES OF COUNSEL

*Warren H. Colodner* of counsel (*Eileen J. Berkman* and *Peter B. Fallon,* with him on the brief; *Barrett Smith Schapiro Simon & Armstrong,* attorneys), for appellants.

*George L. Graff* of counsel (*Louis Schulman* with him on the brief; *Milgrim Thomajan Jacobs & Lee,* attorneys), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

Plaintiff, a commodities trading firm, sues the New York Futures Exchange, Inc. (NYFE), a Federally designated and regulated commodity exchange, and New York Fu-

tures Clearing Corporation (NYFCC), its wholly owned subsidiary and clearing organization, for declaratory and injunctive relief, alleging that on March 19, 1981 it "contracted to sell $120 million face amount of 20-year [United States Treasury] Bonds for delivery in February of 1982" in accordance with the Exchange's Treasury bond contract, and that NYFCC's refusal to accept a delivery notice on February 15, 1982 would violate its obligations under that contract.

The Exchange's rules, which are submitted to the Commodity Futures Trading Commission (CFTC) for review, as required by the Commodity Exchange Act, as amended (US Code, tit 7, § 1 *et seq.*), and the CFTC regulations promulgated thereunder, set forth the standardized terms of the Exchange's 20-year bond contract. The specified unit of trading is a Treasury bond of one issue having an aggregate face value of $100,000. (Exchange Rule 823.) Plaintiff did not place orders for outright sales of these future contracts. Instead, it assumed its 1,200 contract short position in the February, 1982 contract as part of a straddle. Simultaneously with the sale of the 1,200 February contracts for its account, plaintiff also caused 600 November, 1981 and 600 May, 1982 Treasury bond contracts (with an aggregate face amount of $120,000,000) to be bought on the Exchange on its behalf. In futures trading, after a contract has been traded and before the opening of business on the next trading day, the contract is "cleared", i.e., the transaction is presented to a clearing organization (here, NYFCC), which assumes the obligations of the buyer to the seller, and vice versa.

Plaintiff asserts that it took this substantial short position on the basis of literature distributed by NYFE that the Exchange would be open for trading on February 15, 1982 — Washington's Birthday. Although the 1982 Exchange holiday schedule had not yet been determined at the time of this motion, the Exchange staff has indicated that if the 1981 holiday schedule is maintained for 1982, February 15, 1982 (Washington's Birthday) will not be an Exchange business day and the Exchange will be closed. Plaintiff concedes that under Exchange and NYFCC rules the Exchange's board has the right to designate any day it

chooses as an Exchange holiday. Subdivision (1) of section 5a of the Commodity Exchange Act requires that resolutions of the Exchange board concerning holidays be promptly furnished to the CFTC (US Code, tit 7, § 7a, subd [1]). While subdivision (12) of section 5a of the Commodity Exchange Act authorizes the CFTC to exempt "operational and administrative rules" of the Exchange from the requirement of prior approval, prior submission and CFTC review is still required. (US Code, tit 7, § 7a, subd [12].)

The date February 15, 1982 takes on significance because under Exchange Rule 831 governing deliveries a clearing member, such as plaintiff, which has or carries an account that has an open short position in a Treasury bond contract, may issue a delivery notice with respect to such open position on any one of three designated "notice days" during the delivery month. The "first notice day" in any delivery month is the 15th calendar day of the month, unless that day is not an Exchange business day, in which event the first notice day shall be the next Exchange business day. Delivery takes place on the day which is two business days after a delivery notice is issued. Thus, if February 15, 1982 is an Exchange business day that day will be the first notice day under the February, 1982 contract. If, on the other hand, February 15, 1982 is not an Exchange business day, then February 16, 1982, if it is an Exchange business day, will be the first notice day under such contract and the first delivery day will be February 18, 1982.

Exchange Rule 822 provides that each bond must meet Exchange delivery standards, i.e., it must be a Treasury bond which, as of the first notice day of the month in which delivery is to be made, has a maturity of at least 20 years. Thus, if on January 15, 1982 the Treasury issues bonds with a February 15, 2002 maturity date,* such bonds will only be eligible for delivery under the Exchange's February, 1982 contract if the first notice day under such contract is February 15, 1982 (in which event such bonds would mature exactly 20 years from that date). On the

---

\* We were advised on oral argument that an official announcement has been made that Treasury bonds with a maturity date of February 15, 2002 will be issued on January 15, 1982.

other hand, if the first notice day under such contract is February 16, 1982, such bonds will not be deliverable because, as of February 16, 1982, the bonds will mature in one day less than a full 20 years. Plaintiff alleges that it took its short position in the February, 1982 contract because it believed that February 15, 1982 was a "notice day", and speculated that if at some future date, but prior to February, 1982, the Treasury were to issue new bonds maturing on February 15, 2002, such new bonds, if deliverable under the February, 1982 contract, might then be the cheapest deliverable bonds under such contract. In light of its straddle position, plaintiff obviously hoped that the market would reflect the contingency, and that the difference between its short and long contracts would enable it to realize a profit on its trading.

Special Term denied defendant's motion to dismiss the complaint for failure to state a cause of action for the extraordinary relief sought, viz., a declaration that February 15, 1982 is the "first notice day" for plaintiff's February, 1982 contract, and a mandatory injunction compelling defendants to accept any delivery notice plaintiff may issue on that date. We believe that the motion should have been granted because declaratory and injunctive relief are entirely inappropriate in a case such as this, where plaintiff will have an adequate remedy at law, if it actually suffers damage because of its inability to deliver January, 1982 issued 20-year Treasury bonds under its February, 1982 contract, and if defendants are found to have violated a contractual duty owed to plaintiff. Injunctive relief will be afforded only in those extraordinary situations where the plaintiff has no adequate remedy at law and such relief is necessary to avert irreparable injury. (See, e.g., *Kane v Walsh,* 295 NY 198; see, also, *Gaynor v Rockefeller,* 15 NY2d 120.) The complaint and supporting papers are devoid of any showing that plaintiff is faced with irreparable injury or that it would not have an adequate remedy at law if it is able to demonstrate that defendants violated its rights under the February, 1982 contract. "It is only in exceptional cases that a Court will enter into or interfere with the internal affairs of a corporation by * * * injunc-

tion." (*Oram v Kirchik,* 58 NYS2d 431, 434, affd 270 App Div 764.)

Moreover, the courts of this State have long espoused a strong policy against rendering declaratory relief purporting to determine the rights of parties upon the occurrence of a future contingency beyond the parties' control. Courts do not dispense advisory opinions. (*Matter of State Ind. Comm.,* 224 NY 13, 16.) The controversy here depends entirely upon a future event, i.e., the level and direction of interest rates at or about the time the Treasury bonds are issued, which is beyond the parties' control. "[A] request for a declaratory judgment is premature if the future event is beyond the control of the parties and may never occur". (*New York Public Interest Research Group v Carey,* 42 NY2d 527, 531; see, also, *Prashker v United States Guar. Co.,* 1 NY2d 584.)

Finally, to compel NYFCC to accept any delivery notice issued by plaintiff on February 15, 1982 with respect to the February, 1982 contract may indeed constitute regulation of future contracts, a matter which is within the "exclusive jurisdiction" of the Commodity Futures Trading Commission. (US Code, tit 7, § 2.) Commodity futures trading has historically been the subject of congressional regulation. In 1974 the Commodity Exchange Act was amended, as a result of which there has been a "complete overhaul" of the Federal regulatory scheme. (See *Leist v Simplot,* 638 F2d 283, 295, cert granted, 450 US 910.) The 1974 amendments extended the act's coverage beyond those agricultural commodities with which it had traditionally been concerned to include, subject to certain exceptions, "all other goods and articles * * * and all other services, rights, and interests in which contracts for future delivery are presently or in the future dealt in" (US Code, tit 7, § 2); transferred enforcement of the act from the Department of Agriculture to the CFTC, a newly created independent Federal regulatory commission (US Code, tit 7, § 2), and pre-empted the field, displacing State regulation of commodity futures transactions (US Code, tit 7, § 2).

That Congress intended to entrust the regulation of futures trading to the CFTC is clear from the language of subdivision (a) of section 2 of the Commodity Exchange Act: "[T]he Commission shall have exclusive jurisdiction with respect to accounts, agreements * * * and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market". (US Code, tit 7, § 2.) Congress did not, however, divest State and Federal courts of jurisdiction over every controversy that involves any aspect of futures trading. Indeed, subdivision (a) of section 2 of the act expressly provides, in part, "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." (US Code, tit 7, § 2.) Thus, the act did not divest market participants of their right to assert common-law claims in State courts. (See, e.g., *Dart Partnership v Merrill Lynch, Pierce, Fenner & Smith,* 2 Comm Fut L Rep [CCH], par 21,129; *Witzel v Chartered Systems Corp. of N. Y.,* 490 F Supp 343, 347-348; *Poplar Grove Planting & Refining Co. v Bache Halsey Stuart,* 465 F Supp 585; *Hofmayer v Dean Witter & Co.,* 459 F Supp 733, 740-741.) In light of our determination that plaintiff is not entitled to declaratory or injunctive relief under State law, we need not reach the issue of whether a direction requiring the Exchange and NYFCC to remain open on February 15, 1982 — Washington's Birthday — would constitute impermissible State interference with the operations of a Federally designated contract market. (See, e.g. *Haines v First Commodity Co.,* 2 Comm Fut L Rep [CCH], par 21,088.)

Accordingly, the order of Supreme Court, New York County (SCHWARTZ, J.), entered June 12, 1981, denying defendants' motion to dismiss the complaint for failure to state a cause of action, should be reversed, on the law and in the exercise of discretion, with costs and disbursements, and the motion granted.

The appeal from the order of the Supreme Court, New York County (SCHWARTZ, J.), entered on August 10, 1981, granting reargument and upon reargument adhering to its original determination is dismissed as abandoned without costs and without disbursements.

MURPHY, P.J., ROSS and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on June 12, 1981, unanimously reversed, on the law and in the exercise of discretion, and the motion to dismiss the complaint granted. Appellants shall recover of respondent $75 costs and disbursements of this appeal. The appeal from the order entered on August 10, 1981 is dismissed as abandoned, without costs and without disbursements.