OPINION OF THE COURT
Richard F. Braun, J.
This is an action in which plaintiff seeks a permanent injunction against defendant. Defendant asserts affirmative defenses and CPLR article 78 claims as a counterclaim. Plaintiff moves to dismiss defendant’s defenses and counterclaim, pursuant to CPLR 3211 (a) and (b), and for summary judgment. Defendant withdrew his third defense. By stipulation, dated July 13, 2000, plaintiff withdrew its Statute of Limitations argument as to the counterclaim.
Plaintiff is the national governing body for equestrian sports in this country, and promulgates rules governing horse shows and competitions which are recognized by plaintiff. Defendant was a member of plaintiff and agreed to be bound by the rules. Defendant is an accomplished equestrian who was a World Cup finalist several times.
In July 1994, defendant and others were indicted by a Grand Jury of the United States District Court for the Northern District of Illinois for crimes involving the killing of four horses in order to collect insurance proceeds for the horses. On March 19, 1996, defendant pleaded guilty to one count of criminal conspiracy to commit wire fraud. Defendant admitted that he conspired with three others to kill a horse in order to enable one of them to file a false insurance claim as to that horse. Defendant further admitted that he told the horse killer to keep quiet about the people who hired the killer to slaughter the horses, and, if he kept quiet about defendant’s friends and business associates, defendant would pay him money. Defendant also admitted that he later spoke with the horse killer and that defendant said that he would kill the horse killer if he did anything to hurt defendant. Defendant was sentenced to serve 33 months in prison, to be followed by three years of probation, and to make restitution of $200,000 to one of the defrauded insurance companies.
Defendant was charged by plaintiff with violating plaintiffs rule III, article 302.6 and rule VII, article 702 (a), (d) and (f). Rule III, article 302.6 provides:
“Following a hearing, the AHSA’s Hearing Committee may deny or suspend the privilege to participate in or go upon the grounds of Recognized *573 competitions, and/or deny, expel or suspend the privileges of membership in the AHSA to any person, whether or not a member of the AHSA, whom an indictment, information or charge (criminal, administrative, or civil) has asserted, or whom any civil, criminal or administrative court or tribunal has found, to have committed or participated in any plan or conspiracy to commit, any act of cruelty or abuse to a horse, whether or not any such alleged or actual act, plan, or conspiracy occurred on the grounds of a Recognized competition, or was in conjunction with, or was an element of some other offense, actual or alleged. For purposes of this subsection, cruelty and abuse shall include, but shall not be limited to, any of the acts enumerated in Art. 302.4, and, in addition, killing, crippling, abandoning, mistreating, neglecting, or any other form of abuse of a horse. (See Art. 614).”
Rule VII, article 702 provides in pertinent part:
“A violation is any act prejudicial to the best interests of the AHSA, including but not limited to the following:
“a) Violation of the rules of the AHSA * * *
“d) Acting or inciting or permitting any other to act in a manner contrary to the rules of the AHSA, or in a manner deemed improper, unethical, dishonest, unsportsmanlike or intemperate, or prejudicial to the best interests of the sport and the AHSA * * *
“f) Physical assault upon a person and/or cruelty to a horse defined in Art. 302.”
A hearing was scheduled on the charges and held on July 10,-1996. Defendant did not appear at the hearing. Before the hearing, defendant’s attorney sent a letter to plaintiff stating that, in light of defendant’s having pleaded guilty to one charge of the indictment and his admissions regarding his role in the death of one horse, defendant was resigning his membership with plaintiff, effective immediately. The letter further stated that defendant did not intend to appear at the hearing or offer any evidence on his behalf. The charges were sustained by plaintiff. Defendant was immediately expelled from his membership in plaintiff, barred from competing in international competitions, and excluded from all competition grounds either as an exhibitor, participant, or spectator. Defendant was given the right to apply to plaintiff for reinstatement no earlier than August 29, 2009.
*574 By order of Justice DeGrasse of this court, dated June 16, 1999, plaintiff was granted a preliminary injunction enjoining defendant from participating, attending, or spectating at all equestrian competitions recognized by plaintiff. Defendant violated the order by appearing at horse shows in the United States, and by order of Justice DeGrasse, dated March 21, 2000, was held in contempt of court for violating the June 16, 1999 order.
Defendant then moved to modify the June 16, 1999 preliminary injunction order to allow him to attend events recognized by plaintiff in which defendant’s son, also an outstanding American equestrian, participates. By order, dated June 7, 2000, Justice DeGrasse denied the motion.
Defendant’s first defense is that the complaint fails to state a cause of action. That defense is not properly subject to a motion to dismiss pursuant to CPLR 3211 (b) (see, Riland v Todman & Co., 56 AD2d 350, 353 [1st Dept 1977]). However, the defense is meritless because the complaint does state a cause of action.
The second defense is that plaintiff lacks jurisdiction over defendant. The defense is wholly conclusory, in violation of CPLR 3013. Defendant explains in his opposition papers that he means that the lack of jurisdiction is due to defendant’s having resigned from plaintiff before the hearing. However, as stated by plaintiff’s Secretary General in her May 6, 1999 affidavit, defendant agreed to be bound by plaintiff’s rules, including those as to violations and penalties. Defendant’s resignation from plaintiff did not deprive plaintiff of the power to penalize defendant for his violation of the rules committed while he was a member. Furthermore, rule III, article 302.6 applies to “any person, whether or not a member of the [plaintiff].” Rule VII, article 701 makes article 702 (a), (d) and (f) applicable to “any person who acts in a manner in violation of the rules of the [plaintiff] or deemed prejudicial to the best interests of the sport and the [plaintiff].” Thus, the defense should be dismissed.
The fourth defense is that plaintiff will not suffer irreparable harm if defendant is permitted to attend recognized competitions. That is not a proper affirmative defense. Plaintiff has the burden of proving irreparable injury on its claim for a permanent injunction (see, Thomas v Musical Mut. Protective Union, 121 NY 45, 52 [1890]; Chicago Research & Trading v New York Futures Exch., 84 AD2d 413, 417 [1st Dept 1982]; cf., Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990] [same as to a preliminary injunction]). The defense cannot stand.
*575 The fifth defense is not a defense but a restatement of the defendant’s article 78 counterclaim. The defense is cumulative and meritless, and should be dismissed.
Defendant asserts in his counterclaim a conglomeration of article 78 claims that plaintiff was arbitrary and capricious, abused its discretion, acted outside its jurisdiction, and violated lawful procedure, and that there was not substantial evidence to support plaintiff's determination (CPLR 7803 [2], [3], [4]). If defendant had raised a substantial evidence question under CPLR 7803 (4), this court would have been duty bound not to grant the branch of the motion seeking dismissal of the counterclaim but rather required to deny that branch without prejudice, sever the counterclaim, and transfer the entire counterclaim to the Appellate Division (CPLR 7804 [g]; see, Matter of Dippell v Hammons, 246 AD2d 450, 451 [1st Dept 1998]). However, because the determination by plaintiff, a private entity, was not made pursuant to direction by law, there is no viable substantial evidence claim under CPLR 7803 (4) (Matter of Colton v Berman, 21 NY2d 322, 329 [1967]), and thus the court should not transfer the counterclaim to the Appellate Division (Matter of Agusta v Silva, 201 AD2d 405 [1st Dept 1994]; Matter of Burrell v Ortiz, 128 AD2d 391, 392 [1st Dept 1987]). Furthermore, none of the other article 78 claims is meritorious.
Plaintiff has demonstrated its entitlement to a permanent injunction. Plaintiff has shown that it should succeed on the merits. None of defendant’s defenses has merit. As plaintiff determined, defendant violated plaintiffs rules; plaintiff issued an appropriate penalty which, contrary to defendant’s contention, was not disproportionate to penalties issued against others who have violated plaintiffs rules; and defendant has been shown to have more than once violated plaintiffs determination against him.
Growing out of the very same conspiracy that led to the indictment of defendant, another person involved challenged in an article 78 proceeding the adverse determination of plaintiff against him. The granting of the petition there was overturned upon appeal, and the Appellate Division held that plaintiff was justified in suspending petitioner there from his membership in plaintiff based on the indictment of petitioner (Lindemann v American Horse Shows Assn., 222 AD2d 248 [1st Dept 1995]; see also, Matter of Purpura v Richmond County Country Club, 114 AD2d 460 [2d Dept 1985]). Here, defendant not only was indicted but pleaded guilty to the actions which led to the charges and penalties against him.
*576 Plaintiff will suffer irreparable injury if the injunction sought is not granted. Plaintiff has the right to keep unsavory people away from the horse shows that it oversees, even if only to prevent the appearance of impropriety (see, Matter of Tappis v New York State Racing & Wagering Bd., 36 NY2d 862, 864 [1975]). Defendant pleaded guilty to most reprehensible actions. Plaintiff is certainly justified in avoiding actual or potential harm to its events, members, and reputation, not to mention the horses, by having defendant barred from those events.
The equities balance in favor of plaintiff who wants to keep defendant, with his past, away from horse shows and competitions. Although defendant would like to see his son at equestrian competitions, unfortunately for defendant’s son defendant is not permitted to do so. Defendant should have considered the consequences of his actions before he put himself in the position in which he is now.
Therefore, the motion should be granted to the extent of dismissing defendant’s second, fourth, and fifth defenses and counterclaim, and awarding summary judgment to plaintiff against defendant. As requested by plaintiff, defendant should be permanently enjoined from violating plaintiff’s determination against him and from attending as a participant, competitor, or spectator any of plaintiff’s recognized competitions. Plaintiff seeks damages and attorney’s fees in the complaint but has not shown an entitlement to those claims. Those claims must be severed.