AETNA CASUALTY & SURETY CO. et al., Respondents, v
LIBERTY MUTUAL INSURANCE COMPANY et al., Appel-
lants, and LEONARD RINKER et al., Respondents.

Fourth Department, January 31, 1983

318

APPEARANCES OF COUNSEL

*Hurwitz & Fine, P. C.* (*Sheldon Hurwitz* of counsel), for appellants.

*Cox, Barrell, Walsh, Roberts & Grace* (*Peter Murrett* of counsel), for Aetna Casualty & Surety Co., and another, respondents.

*Standard, Weisberg, Heckerling & Rosow, P. C.* (*Stanley Solomon* of counsel), for Leonard Rinker and others, respondents.

### OPINION OF THE COURT

SCHNEPP, J.

The narrow issue in this declaratory judgment action concerns the respective obligations of several insurance companies to provide the Austin Powder Company with insurance coverage for claims arising from the explosion of a parked dynamite-laden truck. The truck was rented from Bison Ford Truck Sales[1] by Austin through its employee Leonard Rinker who used it to deliver explosives to the Lancaster Stone Products Corporation in fulfillment of an explosives service contract. At the time the truck was rented, Rinker assured the rental agent that he would not overload it. Nonetheless, he loaded the two-ton capacity truck with six tons of explosives and 1,000 blasting caps

---

1. Bison Ford Truck Sales, the owner of the truck, is a licensee of the Ford Rent-A-Car System whose parent corporation is the Ford Motor Company.

and drove it approximately 30 miles from Austin's magazine to the Lancaster quarry. The overloading apparently caused friction between the wheels and the wheel wells which created heat causing the blasting caps to detonate and the dynamite to explode. An enormous crater and extensive property damage resulted.

Bison is insured by the Liberty Mutual Insurance Company which issued a "Basic Automobile Policy" and a "Comprehensive Automobile Liability Excess Policy" to Ford. Bison, as a licensee of Ford, and Austin, as a rentee of Bison, are denominated as "additional insureds" under the basic automobile policy which provides coverage for injury or damage "arising out of the * * * use, including loading or unloading" of a vehicle. Austin has a "Business Auto Policy"[2] and a "Comprehensive General Liability Policy" issued by the Aetna Casualty & Surety Co., and excess insurance issued by Walbrook Insurance Co., Ltd. and others (British Excess Insurers). The comprehensive general liability policy provides general business insurance and excludes from coverage injury or damage "arising out of the * * * operation, use, loading or unloading of (1) any automobile * * * owned or operated by or rented or loaned to any insured". Under this policy the automobile exclusion is not applicable to damages assumed by Austin under any contract or agreement relating to the conduct of its business.

Following the explosion, several lawsuits were commenced against Austin to recover compensatory and punitive damages. Complaints in these actions generally alleged negligent use of the truck and negligent business practices by Austin. In addition, Lancaster alleged that Austin breached an indemnification agreement. Aetna requested that Liberty Mutual provide insurance coverage and a defense for Austin pursuant to the terms of its insurance policy and the provisions of the truck rental agreement[3] contending that the explosion arose out of the

---

**2.** This policy provides excess coverage only for nonowned automobiles.

**3.** The rental agreement obligated Bison to provide primary insurance coverage to a permissive user (Austin) of a rental vehicle provided that the vehicle was not "obtained * * * by fraud or misrepresentation" or was not "obtained and used in furtherance of an illegal purpose".

use and operation of the truck. Liberty Mutual refused, arguing that Austin was not a permissive user and that, in any event, the explosion did not arise out of the use and operation of the truck. It claimed that Aetna has the duty to defend and indemnify Austin under the terms of the Aetna policies, and that Austin is required to indemnify Bison under the rental agreement.[4] This action for declaratory judgment to determine the applicable insurance coverage ensued.

After a Bench trial in which proof was adduced on permissive use and the circumstances surrounding the explosion, Supreme Court declared, *inter alia,* that the explosion was an "occurrence" which arose out of the use and operation, including loading and unloading, of the truck within the meaning of the Liberty Mutual basic automobile policy under which Austin is an additional insured; that this "occurrence" triggered the insurance coverage; that the damage claims arose out of Austin's alleged negligence in overloading the truck; that Austin used the truck pursuant to the rental agreement with the permission of Bison and not for an illegal purpose; that Liberty Mutual has the duty to defend Austin; that the Liberty Mutual primary and excess policies must be exhausted before Aetna and British Excess Insurers respectively are required to indemnify Austin; and, that Bison and Liberty Mutual do not have any claim against Austin for indemnification under the rental agreement.

We agree with the trial court that the Liberty Mutual basic automobile policy is applicable to the loss resulting from the explosion of the truck and that Liberty Mutual must provide insurance coverage to Austin. The trial court's determination was based, in part, on its finding that the explosion and subsequent damage claims arose "out of the * * * use, including loading or unloading" of the truck. Clearly, under the facts of this case, this determination was correct. The words "arising out of" have "broader significance than the words 'caused by', and are ordinarily

---

4. Paragraph 6 of the agreement provides that the "[c]ustomer (Austin) shall * * * indemnify * * * [l]icensee (Bison) from * * * any and all losses * * * damages * * * claims * * * and expenses arising out of the use or possession of the [v]ehicle".

understood to mean originating from, incident to, or having connection with the use of the vehicle." (6B Appleman, Insurance Law & Practice [rev ed], § 4317; see, also, 12 Couch, Cyclopedia of Insurance Law [2d ed], § 45:61). In this case the proof unmistakably established that the claims against Austin arose from the explosion of the truck which was caused by its overloading, and that the explosion occurred while the truck was being used to transport explosives. As a result, the claims have a connection with the use of the truck and fall within the risk covered by the Liberty Mutual policy. For the same reason on the question of coverage the automobile exclusion in the Aetna comprehensive general liability policy applies.

Liberty Mutual's argument that it has no duty to provide Austin with insurance coverage because Austin was a nonpermissive user of the truck is without merit. It is undisputed that Austin was a rentee of Bison. As such it is an additional insured under the Liberty Mutual policy without regard to whether it was a permissive user under the rental agreement. "[T]he legal relationship between the lessor and the lessee [of a rented automobile] is discrete and independent of the obligations of the insurer under the policy of insurance." (*Allstate Ins. Co. v Travelers Ins. Co.,* 39 NY2d 784, 785.) In any event, overriding the provisions of the rental agreement and the Liberty Mutual policy provisions is subdivision 1 of section 388 of the Vehicle and Traffic Law which makes "[e]very owner of a vehicle used or operated in this state" liable "for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." This section "expresses the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant." (*Continental Auto Lease Corp. v Campbell,* 19 NY2d 350, 352.) To that end, we have held that "there is a presumption of consent created by the statute, a presumption which has been characterized as 'very strong' * * * and which continues until there is substantial evidence to the contrary to over-

come it" (*Aetna Cas. & Sur. Co. v Brice,* 72 AD2d 927, 928, affd 50 NY2d 958).

We are not confronted here with the type of case where consent was never given. The crux of Liberty Mutual's argument is that Bison would not have given its consent to the truck rental if it had known of Austin's intent to transport explosives and to deceive it by overloading the truck. Although a violation of restrictions imposed by a private owner may negate consent (see *Aetna Cas. & Sur. Co. v Brice,* 72 AD2d 927, 928, *supra; Capalario v Murray,* 52 AD2d 1037), courts have been loath to allow insurers of car rental companies to escape liability because of a violation of the rental agreement (see *Allstate Ins. Co. v Travelers Ins. Co.,* 39 NY2d 784, *supra; MVAIC v Continental Nat. Amer. Group Co.,* 35 NY2d 260; *Hardeman v Mendon Leasing Corp.,* 87 AD2d 232; *Allstate Ins. Co. v Dailey,* 47 AD2d 375, affd 39 NY2d 759). The lessor's "carrier must bear the responsibility for any injury suffered by [a third party], for [the lessor] put the automobile into the traffic stream, and had at its disposal the opportunity to check the means by which the automobile was leased." (*Allstate Ins. Co. v Dailey, supra,* p 378; see, also, *Hardeman v Mendon Leasing Corp.,* 87 AD2d 232, 239, *supra.*)

Here, Bison never inquired as to Austin's specific intended use of the truck, but it is charged with knowledge, from Austin's credit application which was in its files, that Austin was in the "explosives" business. Despite this constructive knowledge, it placed no restriction whatever on Austin's use of the truck which would vitiate the element of consent that the statute requires. It delivered the truck to Austin for use in the ordinary course of Austin's business and put the truck into the stream of traffic. Overloading must be considered as a reality of commercial rentals. A violation of the rental agreement under these circumstances does not rebut the presumption of permissive use and does not relieve Liberty Mutual of its contractual obligation. Further, Austin did not use the truck for an illegal purpose. The transportation of explosives is legal; it was only the manner or method by which the explosives were transported here that was illegal. (See *Roach v Churchman,* 431 F2d 849, 853-854; *Hall's Aero Spraying v*

*Underwriters at Lloyd's, London,* 274 F2d 527, 531-532.) While this conduct may constitute negligence, it does not render the purpose of the rental or use illegal.

Having concluded that the Liberty Mutual basic automobile policy provides insurance coverage to Austin for damage claims arising out of the explosion, it necessarily follows that Liberty Mutual must defend Austin against these claims. This holding, however, does not mean that Aetna is free of any responsibility to provide Austin with insurance coverage. Here, Lancaster has sued Austin for breach of contract which obligates Austin to indemnify it for all damage arising from Austin's improper use or handling of explosives. This contractual claim for indemnification, which by the express terms of the Aetna comprehensive general liability policy is not subject to the automobile exclusion, is within the coverage provided by this policy. Thus Aetna, under this insurance contract, is required to defend Austin against this claim and to provide insurance coverage for this risk.

We note that ordinarily the obligation of an insurer to defend is a determination of law made by comparing the allegations of the complaint against the insured with the provisions of the insurance policy (see *Touchette Corp. v Merchants Mut. Ins. Co.,* 76 AD2d 7, 9). "An insurer's obligation to defend is broader than its obligation to pay, and arises whenever the complaint 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy'" (*Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, 72; see, also, *Niagara County v Utica Mut. Ins. Co.,* 80 AD2d 415, 420, mot for lv to app dsmd 54 NY2d 831; *Touchette Corp. v Merchants Mut. Ins. Co., supra; United States Fid. & Guar. Co. v Copfer,* 63 AD2d 847, affd 48 NY2d 871). In addition, "declaratory judgment relief should not be granted with respect to issues arising in negligence actions, for those issues will need to be tried in such actions anyway and hence to try them preliminarily in a declaratory judgment action would result in unnecessary litigation." (*Aetna Cas. & Sur. Co. v Lauria,* 54 AD2d 183, 185.) Further, where complaints allege alternative theories upon which ultimate liability may be based,

questions of indemnification should usually be determined in the underlying lawsuits, not in a declaratory judgment action (see *Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 398-399; *Cordial Greens Country Club v Aetna Cas. & Sur. Co.,* 41 NY2d 996, 997; *New York Mut. Underwriters v Cavallaro,* 90 AD2d 962; *Touchette Corp. v Merchants Mut. Ins. Co.,* 76 AD2d 7, 10-11, *supra*). In this case, however, each insurer requested the court to determine the applicable insurance coverage and to resolve the factual controversy surrounding whether Austin was a permissive user of the truck and whether the explosion arose out of its use. These issues involved questions related to the extent of coverage intended by the insurance contracts. They were fully tried by the affected parties, and the findings and conclusions of the trial court are sustained by credible proof in the record (see *McCall v Town of Middlebury,* 52 AD2d 736). The parties, having litigated these issues, are not entitled to relitigate them. We consider it of no consequence that the plaintiffs in the underlying tort actions are not joined as parties to this action (see CPLR 1001). The focus of the within action was insurance coverage only; issues of ultimate liability for purposes of recovery were not decided. In any event, the plaintiffs in those actions are not prejudiced in any way by the resolution of this case, and the determination here is not *res judicata* as to them. The allegations in their complaints seek to affix responsibility for damage caused by the explosion, and these plaintiffs are not limited in establishing their claims at trial on whatever theory of liability their proof may permit.

■ This said, we now consider the priority of insurance coverage applicable to claims for injury or damage arising out of the use of the truck. We hold that the trial court erred in its determination that the Liberty Mutual primary and excess policies must be exhausted before Aetna and British Excess Insurers are required to indemnify Austin. While it is clear that the coverage provided by the Liberty Mutual basic automobile policy is primary, the next layer of coverage applicable to this loss is not limited to the Liberty Mutual excess policy. The Aetna business auto policy provides excess coverage only for nonowned vehicles. Because the truck was rented by Austin, this is

an excess policy which covers the same risk as the Liberty Mutual excess policy. The Aetna policy provides excess insurance "over any other collectible insurance" and contains the provision that "[w]here two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis." The Liberty Mutual excess policy provides that it is "excess insurance with respect to any loss against which the insured has other valid and collectible insurance". Generally, "[m]utual excess policies covering the same risk cancel each other out" (*Kansas City Fire & Mar. Ins. Co. v Hartford Ins. Group,* 57 NY2d 920, 922). Here, as in *Kansas City Fire & Mar. Ins. Co. v Hartford Ins. Group* (*supra,* pp 922-923), neither policy "contains language specifically making one an excess insurer over all other excess insurers covering the same risk, and neither [policy] contains language the plain meaning of which would be distorted by the application of the general rule". Each policy provides a form of nonprimary coverage and each by its terms generally purports to be excess to the other. Although the Aetna policy specifically envisions contribution with other excess insurers and the Liberty Mutual policy is silent on this point, the Liberty Mutual policy does not negate the possibility of contribution with other excess insurers. We hold that under these circumstances each excess insurer must contribute in proportion to its limit amount of insurance (see *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,* 51 NY2d 651, 655). The third layer of insurance is the British Excess Insurers policy which expressly negates the possibility of contribution with other insurers and manifests an intent to be excess over the other excess insurance.

Finally, we hold that the trial court erred in declaring that Bison and Liberty Mutual have no claim against Austin for indemnification under Bison's rental agreement. This claimed right of indemnification may not be considered by the court until the resolution of the underlying actions and the determination of the amount of Bison's loss, if any. The granting of a declaratory judgment rests in the discretion of the court, but it "may not be granted if it

will only result in an advisory opinion. (*New York Public Interest Research Group v Carey*, 42 NY2d 527, 529-530.)" (*Combustion Eng. v Travelers Ind. Co.*, 75 AD2d 777, 778, affd 53 NY2d 875; see, also, Siegel, New York Practice, § 436, p 578; 3 Weinstein-Korn-Miller, NY Civ Prac, pars 3001.03, 3001.05.) "[T]he courts of this State have long espoused a strong policy against rendering declaratory relief purporting to determine the rights of parties upon the occurrence of a future contingency beyond the parties' control. Courts do not dispense advisory opinions." (*Chicago Research & Trading v New York Futures Exch.*, 84 AD2d 413, 417; see, also, *Combustion Eng. v Travelers Ind. Co., supra.*)

Accordingly, the judgment should be modified and declaratory judgment granted in accordance with this opinion.

HANCOCK, JR., CALLAHAN and DENMAN, JJ., concur with SCHNEPP, J.; SIMONS, J. P., not participating.

Judgment modified, on the law and facts, without costs, and as modified affirmed, in accordance with the opinion by SCHNEPP, J.