Felix Manuel **REYES LOPEZ,** et al., **Plaintiffs,**

v.

**MISENER MARINE CONSTRUCTION, INC.,** et al., **Defendants.**

**Civ. No. 84–1869 (RLA).**

United States District Court, D. Puerto Rico.

July 10, 1987.

 

Gabriel I. Peñagarícano, Juan T. Peñagarícano, San Juan, Puerto Rico, for plaintiffs.

Alvaro R. Calderón, Hato Rey, Puerto Rico, Cordero, Colón & Miranda, Francisco Ponsa Flores, San Juan, Puerto Rico, for defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

The remaining controversy in this diversity case is which of the three insurance policies held by the defendants should respond for the payment made to plaintiffs in settlement of the main controversy in the present case and for the expenses in defending Misener Marine Construction, Inc. (Misener), an insured, in this litigation.

## PROCEDURAL BACKGROUND

Two consolidated actions were filed as a result of an accident that took place on June 27, 1984. On that date plaintiff Félix Manuel Reyes López was injured by the tail rotor of a helicopter owned by Omniflight Offshore, Inc. (Omniflight) and operated by Robert C. Blackett, its employee, after landing at the premises of Misener.

The actions were brought by the manager of Reyes López[1], who up to then had been a professional boxer, and Reyes López, his wife, and children.[2]

On February 18, 1986 (docket No. 197A) the Court dismissed the manager's suit.

Named defendants in the third amended complaint filed by Reyes López on November 15, 1985 (docket No. 147) were Misener; Omniflight; Carlyle Blackett; New Hampshire Insurance Co. (New Hampshire); United States Aviation Underwriters, Inc.

1. Civil No. 84–3027.

2. Civil No. 84–1869.

3. Docket No. 270.

4. Docket No. 272.

(USAU); and Nando Security Guard, Inc. (Nando).

The parties reached a stipulation for settlement on August 5, 1986 (docket No. 246) whereby USAU and New Hampshire would advance plaintiffs $310,000.00 in full settlement of all their claims and would submit to the Court for determination, without the need for trial, which of the policies provided coverage and how should the settlement amounts be apportioned between them.

New Hampshire[3] and USAU[4] filed their respective motions for summary judgment on December 19, 1986. Thereafter, both filed respective responses on March 2, 1987[5] and USAU replied on April 3, 1987 (docket No. 281).

## ISSUES

The Court must decide:

1. Which of the three policies at issue provide coverage for the accident in question;

2. Each insurer's ultimate liability; and

3. Which insurer shall bear the cost of Misener's defense.

## STIPULATED FACTS[6]

1. On June 27, 1984, shortly before 6:00 p.m., plaintiff Félix Manuel Reyes López entered the premises of defendant Misener in Piñones, Puerto Rico.

2. While on the premises, plaintiff Reyes López came in contact with the tail rotor of a helicopter owned by Omniflight and operated by its employee.

3. As a consequence of the above mentioned accident, the left arm of plaintiff Reyes López was severely injured, and was subsequently amputated approximately midway between the elbow and the shoulder.

5. New Hampshire docket No. 274 and USAU docket No. 275.

6. As stipulated by the parties in the proposed Pretrial Order dated July 1986 (App. 6–29).

## ADDITIONAL FACTS [7]

4. On or about June 1984 Misener was engaged in a project which involved the construction of a submarine sewer disposal line from a sewer disposal plant near the Loíza River in the Municipality of Loíza, Puerto Rico, out to sea. An offshore barge was used to perform the work at sea. Misener had its offices, materials storage, and related facilities at an on-shore project site located in the Municipality of Loíza, on the North shore of the Island of Puerto Rico.

5. A helicopter owned by Omniflight was used to transport Misener employees between the on-shore project site and the off-shore barge.

6. Inside the Misener on-shore project site there was a helipad for the helicopter to take-off, land, board and disembark passengers.

7. The on-shore project site, including the helipad, was designed and built by Misener for Omniflight's helicopter use.

8. Misener controlled the on-shore project site, where the accident occurred.

9. It was Misener's responsibility to provide the necessary security at the on-shore project site where the helipad was located, which was under Misener's control. In order to provide the required security at said premises where the accident occurred, Misener contracted the services of Nando to provide guard services during weekdays from 6:00 in the afternoon (6:00 p.m.) until 6:00 in the morning (6:00 a.m.), with the guard services to be provided on a twenty four (24) hours a day basis on weekends and holidays.

10. Injured plaintiff Reyes López was not employed by Misener and was not authorized by Misener to enter the project site.

11. There was a cyclone fence approximately eight feet high around the perimeter of the Misener project site, intended to control the access and to prevent the entry of unauthorized persons and automobiles. A gate in the cyclone fence was located on the Southern boundary of the project site.

12. On June 27, 1984 Reyes López entered the Misener project site through said gate, at approximately 5:45 p.m. Reyes López went to fill a can with water from a faucet which was located within the Misener project site, at a point which was approximately diagonally across the helipad from the entrance gate.

13. Misener had not contracted for any security services to be provided at its project site on Wednesday, June 27, 1984 at 5:45 p.m., when injured plaintiff Reyes López entered the Misener project site, nor at the time shortly thereafter, when the accident occurred.

14. Robert C. Blackett, an Omniflight employee, operated the helicopter at the time when injured plaintiff Reyes López came in contact with its tail rotor. He is a duly licensed Commercial Instrument Helicopter pilot, who at the time of the accident had approximately 13 years of experience as a pilot, with more than 3,000 flight hours in this type of aircraft.

15. The Omniflight helicopter, which was used to provide transportation for the Misener employees and equipment between the off-shore barge and the on-shore facilities (where the accident occurred), was being put to such use pursuant to a Helicopter Services Contract entered into between Omniflight and Misener on April 27, 1984.

16. Before the accident occurred, the helicopter with a full load of passengers made a normal approach to its usual landing site on the Misener helipad, located within the Misener premises; and landed properly, fully within the helipad.

17. After the aircraft had landed, pilot Blackett rolled the helicopter's throttle back to flight idle. The passengers who were on board the helicopter were about to disembark and at least one of them apparently had already gotten off the aircraft. Then, the injured plaintiff Reyes López inadvertently walked into the helicopter's tail

---

7. Set forth by USAU in its motion filed on December 19, 1986 (docket No. 272) with supporting evidence and not controverted by New Hampshire.

rotor, thereby suffering the injury from which this litigation arose.

18. On December 31, 1983 USAU issued two different policies to Omniflight: All-Clear *Aircraft* Policy No. 400AC–15583; and *Airport* Liability Policy No. AL–11483 with Misener as an additional named insured under both (emphasis supplied).

19. On February 7, 1984 New Hampshire issued Comprehensive General Liability Policy No. 67–01202 to Misener.

## ARGUMENTS

## COVERAGE

USAU concedes coverage under both the aircraft and airport policies [8] but denies liability under the aircraft policy.

New Hampshire, on the other hand, denies coverage under its comprehensive general liability policy based on the exclusion (b) of its policy, which in pertinent part reads:

This insurance does not apply:

. . . . .

(b) to bodily injury . . . arising out of the operation, use, loading or unloading of

(1) any . . . aircraft . . . rented . . . to any insured . . .

(App. 272).

USAU opposes this argument on two grounds: first, it alleges that the helicopter was not rented to Misener and second, that there is coverage for Misener's non-aircraft negligence which contributed to the accident.

*Rental*

■ The contract between Omniflight and Misener [9] provided, *inter alia*, that Omniflight would furnish Misener, for its exclusive use, a helicopter with all necessary personnel and maintenance services. The contract specified that all services supplied by Omniflight would be rendered on an independent contractor basis. The contract specified the payment terms and its duration.

USAU argues that this relationship cannot be considered as a rental agreement because Misener had no control over the helicopter which was only made available to Misener for its use. It cites *Galiñanez v. Superior Court*, 77 P.R.R. 836, 841 (1955); and *Matter of Daben Corp.*, 469 F.Supp. 135, 142–143 (D.P.R.1979) in support of its position.

We find these cases inapposite. *Galiñanez* dealt with the Reasonable Rents Act, a special legislation, and *Daben* with a "department lease" under common law doctrine.

The Puerto Rico Civil Code, 31 L.P.R.A. § 4011, provides that both objects and services may be leased. All a lease contract requires to be valid is the use and enjoyment of an object for a definite period of time for a fixed price. 31 L.P.R.A. § 4012. A service lease contract obliges a person to render a particular service in exchange for a certain amount of compensation. 31 L.P.R.A. § 4013.

The contract between Omniflight and Misener for the use and maintenance of the helicopter clearly fulfilled the requirements of a lease under the Civil Code: There is a combination of a lease of an object, the helicopter and pertinent services. The contract clearly provides for the use of the helicopter for a particular period of time in exchange for payment of certain fixed fees. The payment for the services to be provided also came under the terms of the contract.

*Non-Aircraft Negligence*

■ USAU argues that exclusion (b), even if applicable, would only preclude coverage for liability arising out of the use of the aircraft, but not for liability due to negligence on Misener's part in the safeguarding of its property which it contends includes both the helipad and the surrounding premises.

The exclusion clause, however, is clear in that all it requires to become effective is

---

**8.** Brief filed on December 19, 1986 p. 14 (docket No. 272) and Reply filed on March 2, 1987 p. 2 (docket No. 275).

**9.** App. 58–67.

that the injuries "arise out of the operation" of a rented helicopter.

The phrase "arising out of" is much broader than "caused by" and will ordinarily mean damages "originating from, incident to, or having connection with the use of the vehicle". 12 Couch on Insurance 2nd § 45:61, 1986 Suppl. p. 75 citing *Aetna Casualty and Surety Co. v. Liberty Mut. Ins. Co.*, 91 A.D.2d 317, 459 N.Y.S.2d 158 (1983, 4th Dept.)

In other words, as long as the injuries are related to the use of the helicopter, the New Hampshire policy expressly does not provide coverage regardless of the additional liability allegations.

Based on the foregoing, we conclude that exclusion (b) of the New Hampshire policy is applicable and that this policy does not provide coverage in this case.

## LIABILITY

Our next step is to assess the liability, if any, under the aircraft and airport policies which, as we have stated, do provide coverage for the injuries alleged in the complaint.

Coverage and liability are two different issues. Regardless of the fact that a policy may cover a particular risk, its duty to pay will depend, in this particular case, on the responsibility, if any, of the insured.

### Aircraft Policy

New Hampshire argues that negligence is not a prerequisite for payment under the aircraft policy and contends that all that is required is that the claims result from the use of the aircraft. (See Reply Brief filed on March 2, 1987; docket No. 274).

A reading of the policy points to a different result.

The aircraft policy specifically states that it provides coverage for *"liability claims"* made against the insured resulting from the "ownership, maintenance or use of the aircraft". (App. 190). The insured cannot be liable, and hence neither can his insurer, unless he is legally responsible for the claim.

A liability policy implies that the insurance company will only pay for damages caused by the insured for which the insured is liable due to his negligence. In other words, the insurer is only required to pay "with respect to legal liability of the insured"; the insurer is not liable unless, under legal principles, the insured is liable. 12 Couch on Insurance 2nd § 45:28. Furthermore, the negligent act must have either caused or contributed to the bodily injury. 12 Couch on Insurance 2nd §§ 45:41 and 45:32.

▮ The uncontroverted evidence in the file leads us to conclude that the accident, even though involving an aircraft, was not caused by its negligent operation.

The testimony of the witnesses submitted via depositions was to the effect that the helicopter had properly landed within the marked helipad area and at least one of the passengers was about to descend when plaintiff Reyes López inadvertently walked into the tail rotor. The National Transportation Safety Board Accident Report also concluded that the incident occurred when the aircraft "was parked with the engine running when an unauthorized person walked into the tail rotor" (App. 69).

Under these circumstances, we find no liability on the part of the insured in the operation of the helicopter and hence, no liability on the part of USAU under the aircraft policy.

### Airport Policy

USAU only disputed liability under the *aircraft* policy and thus conceded liability for Misener's lack of due care in the safeguarding of the particular helipad area under the *airport* policy.

Accordingly, it is bound to pay for the full settlement award under the airport policy.

## COST OF MISENER'S DEFENSE

An insurer's duty to defend will depend on the allegations made in the complaint and will arise when these allegations establish the possibility of coverage. However, there is no such duty when coverage is

non-existent due to a policy exclusion. 14 Couch on Insurance 2nd § 51:42.

It appearing New Hampshire's policy did not provide coverage based on exclusion (b) pertaining to injuries "arising out of the operation" of an aircraft, it had no duty to defend Misener in these proceedings. Accordingly, USAU's petition for the sharing of the expenses in defending Misener in this action is hereby DENIED.

## SUMMARY JUDGMENT

We find that, based on the record as developed by the parties in this case there are no issues of material fact which preclude summary judgment, and therefore, disposition without the need for trial is in order in accordance with Rule 56(c) of Federal Rules of Civil Procedure. *Palhava de Varella-Cid v. Boston Five Cents Sav.*, 787 F.2d 676, 678 (1st Cir 1986).

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by New Hampshire on December 19, 1986 (docket No. 270) is hereby GRANTED as follows:

Exclusion (b) on the New Hampshire policy is applicable and the Comprehensive General Liability Policy No. 67–01202 does not provide coverage in this case nor did New Hampshire have an obligation to pay for the cost of Misener's defense.

Under the provisions of Airport Liability Policy No. AL–11483, USAU is bound to pay the $310,000.00 settlement award in full.

The Motion for Summary Judgment filed by USAU on December 19, 1986 (docket No. 272) is hereby GRANTED insofar as we find there is no liability under USAU's all clear Aircraft Policy No. 400AC–15583.

Judgment shall be entered accordingly.

IT IS SO ORDERED.