KIMMINS INDUSTRIAL SERVICE CORPORATION, Plaintiff–Appellee,

v.

RELIANCE INSURANCE COMPANY, National Casualty Company, Defendants,

Landmark Insurance Company, Defendant–Appellant.

No. 455, Docket 93–7481.

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1993.

Decided March 10, 1994.

Thomas R. Smith, Buffalo, NY (George M. Gibson, Gibson, McAskill & Crosby, on the brief), for plaintiff-appellee.

Kevin S. Doyle, Buffalo, NY (J. Mark Gruber, Maloney, Gallup, Roach, Brown & McCarthy, on the brief), for defendant-appellant.

Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and TENNEY, District Judge*.

* Honorable Charles H. Tenney, of the United States District Court for the Southern District of New York, sitting by designation.

KEARSE, Circuit Judge:

Defendant Landmark Insurance Company ("Landmark") appeals from so much of a judgment of the United States District Court for the Western District of New York, Edmund F. Maxwell, *Magistrate Judge*, entered pursuant to 28 U.S.C. § 636(c) (1988), as declares that Landmark is required to indemnify its insured, plaintiff Kimmins Industrial Services Corporation ("Kimmins"), for losses Kimmins may incur in connection with certain claims relating to injuries of workers who were engaged in the removal of asbestos. The magistrate judge ruled that because the injuries were only incidentally related to the removal of the asbestos, the claims were not within the insurance policy's exclusion for claims arising out of the removal of that substance. Landmark challenges this ruling on appeal. For the reasons below, we disagree and affirm the decision of the district court.

## I. BACKGROUND

The background of this litigation is not in dispute. Kimmins is engaged in the business of performing clean-ups of industrial sites. In February 1990, Kimmins was engaged by Bethlehem Steel Corporation ("Bethlehem") to dismantle certain equipment and structures at one of Bethlehem's New York plants. Their agreement provided that Kimmins would indemnify Bethlehem against all liability for any injuries suffered "by reason of any act or omission, whether negligent or otherwise, on the part of any of the Bethlehem Companies" during the work covered by the contract. Kimmins subcontracted the asbestos removal part of the project to Kimmins Abatement Corporation.

Working on the Bethlehem clean-up project in June 1990, Kimmins Abatement Corporation employees William Bailey and Steven Samson were at the top of a "quench tower," removing equipment and picking up loose asbestos that had previously been removed from the tower walls. A quench tower is a device used to cool railcar loads of hot coke, a coal derivative, by dousing the loads

with water as they pass beneath the tower; the process generates a large quantity of steam. While Bailey and Samson were working, a load of coke was doused inadvertently, and Bailey and Samson suffered serious burns from the rising cloud of hot steam. Attempting to escape the steam, they suffered additional injuries when they fell from the tower.

Bailey and Samson brought suits in New York state court against Bethlehem, alleging that Bethlehem's allowing the coke to be doused while work was in progress on the tower constituted actionable negligence. Bethlehem removed these suits to the United States District Court for the Western District of New York and served third-party complaints against Kimmins for indemnification and contribution.

Kimmins had purchased three pertinent insurance policies covering periods that included June 1990: (1) a Commercial General Liability policy from defendant Reliance Insurance Company ("Reliance"), (2) an Umbrella Liability Policy from defendant National Casualty Company ("National"), and (3) an Excess Umbrella Liability policy from Landmark. The Landmark policy bore an endorsement that excluded coverage for certain asbestos-related injuries:

### ASBESTOS EXCLUSION

In consideration of the premium paid and notwithstanding anything contained in this policy to the contrary, it is agreed as follows:

*The coverage afforded by this policy does not apply to bodily injury, personal injury or property damage arising out of:*

1) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2) The use of asbestos in constructing or manufacturing any good, product, or structure; or

3) *The removal of asbestos from any good, product, or structure;* or

4) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

(Emphasis added.) The National and Reliance policies contained virtually identical asbestos exclusions. Kimmins asked Reliance to defend Kimmins against Bethlehem's claims for indemnification and contribution and notified all three insurers that it would seek indemnification from them if it were held liable on the Bethlehem claims. Reliance declined to defend Kimmins, contending that the asbestos exclusion applied.

Kimmins commenced the present action against Reliance, National, and Landmark, seeking a judgment declaring that Reliance is required to defend the claims asserted by Bethlehem and that all three insurers are required to indemnify Kimmins for any judgment against it in those actions. All parties moved for summary judgment. In a Decision and Order dated March 19, 1993 ("Decision"), the magistrate judge, before whom the parties had consented to proceed, denied defendants' motions and granted that of Kimmins. The magistrate judge noted that, though both Bailey and Samson were removing asbestos at the time of their injuries,

[t]he source of the injuries suffered by both was the rail car operated by Bethlehem. The coke it contained, the water poured on it and the resulting steam were in no way connected to the asbestos removal, or to asbestos at all.

Decision at 4. Observing that "[t]he injury would have happened to anyone standing on the tower, whether or not they were involved in asbestos removal," *id.* at 5, the magistrate judge found that

the asbestos removal was incidental to the injury. While it is true that Mr. Samson and Mr. Bailey would not have been on that platform had they not been removing asbestos, the asbestos was not the proximate cause of their injury. The operation of the railroad car, having nothing to do with asbestos, was the cause.

*Id.* at 6. The magistrate judge concluded that the injuries therefore did not "aris[e] out of" the removal of asbestos, and the asbestos exclusion was inapplicable.

Accordingly, the magistrate judge ordered that judgment be entered declaring that Reliance is obligated to defend Kimmins against the Bethlehem claims and declaring that all

three defendants are obligated to indemnify Kimmins "for all sums it may become obligated to pay as damages, costs and expenses as a result of the claims alleged in the lawsuits, as provided in the terms of their respective insurance policies." *Id.* at 8.

Landmark has appealed, and the parties have agreed that the outcome of this appeal will also determine the obligations of National. Reliance has not appealed.

## II. DISCUSSION

On appeal, Landmark argues principally that the exclusion for injury "arising out of" asbestos removal should be read to exclude from coverage any injury occurring while the injured person was engaged in removing asbestos. Under New York law, which the parties agree governs this diversity case, we disagree.

As a fundamental matter, the objective of contract interpretation is to give effect to the expressed intention of the parties. *See, e.g., Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 171–72, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907, 909 (1973); *Morlee Sales Corp. v. Manufacturers Trust Co.,* 9 N.Y.2d 16, 19, 210 N.Y.S.2d 516, 518, 172 N.E.2d 280, 281 (1961); 4 S. Williston, *Williston on Contracts* § 600, at 280 (3d ed. 1961). "[T]he basic principle that guides a Court in its interpretation of the terms contained in an insurance contract 'is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract....'" *Album Realty Corp. v. American Home Assurance Co.,* 176 A.D.2d 513, 515, 574 N.Y.S.2d 704, 706 (1st Dep't 1991) (mem.) (quoting *Bird v. St. Paul Fire & Marine Insurance Co.,* 224 N.Y. 47, 51, 120 N.E. 86 (1918)). Insurance contracts are normally construed strictly against the insurer. *See, e.g., United States Fidelity & Guaranty Co. v. Annunziata,* 67 N.Y.2d 229, 232, 501 N.Y.S.2d 790, 791, 492 N.E.2d 1206, 1207 (1986); *Miller v. Continental Insurance Co.,* 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 567, 358 N.E.2d 258, 259 (1976). Thus, "where the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policy holder and against the company which issued the policy." *Little v. Blue Cross of Western New York,* 72 A.D.2d 200, 203, 424 N.Y.S.2d 553, 555 (4th Dep't 1980); *see Miller v. Continental Insurance Co.,* 40 N.Y.2d at 678, 389 N.Y.S.2d at 567, 358 N.E.2d at 259.

Exclusions from insurance policy coverage are given strict construction. *See, e.g., Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984); *M.H. Lipiner & Son, Inc. v. Hanover Insurance Co.,* 869 F.2d 685, 687 (2d Cir.1989) (applying New York law) ("[e]xclusionary clauses are given the interpretation most beneficial to the insured"). In order to be enforced, "exclusions or exceptions from policy coverage must be specific and clear"; they "are not to be extended by interpretation or implication." *Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d at 311, 486 N.Y.S.2d at 876, 476 N.E.2d at 275; *see also Miller v. Continental Insurance Co.,* 40 N.Y.2d at 678, 389 N.Y.S.2d at 567, 358 N.E.2d at 259; *General Accident Insurance Co. v. United States Fidelity & Guarantee Insurance Co.,* 193 A.D.2d 135, 137, 602 N.Y.S.2d 948, 950 (3d Dep't 1993); *Album Realty Co. v. American Home Assurance Co.,* 176 A.D.2d at 515, 574 N.Y.S.2d at 705. "[O]nce the insured shows that a loss has occurred, the insurer shoulders the burden of demonstrating that the loss claimed is excluded expressly from coverage under the policy terms." *M.H. Lipiner & Son, Inc. v. Hanover Insurance Co.,* 869 F.2d at 687.

When the court interprets an insurance policy excluding from coverage any injuries "caused by" a certain class of conditions, "'"the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings."'" *Album Realty Co. v. American Home Assurance Co.,* 176 A.D.2d at 514, 574 N.Y.S.2d at 705 (quoting *Home Insurance Co. v. American Insurance Co.,* 147 A.D.2d 353, 354, 537 N.Y.S.2d 516, 517 (1st Dep't 1989) (quoting *Pan American World Airways v. Aetna Casualty & Surety Co.,* 505 F.2d 989, 1006 (2d Cir.1974) (applying New York law))). Although "[t]he words 'arising

out of' have 'broader significance than the words "caused by", and are ordinarily understood to mean originating from, incident to, or having connection with,'" *Aetna Casualty & Surety Co. v. Liberty Mutual Insurance Co.*, 91 A.D.2d 317, 320–21, 459 N.Y.S.2d 158, 161 (4th Dep't 1983) (quoting 6B Appleman, *Insurance Law & Practice*, § 4317), the New York courts have not found injuries to "aris[e] out of" a specified condition unless there was some causal relationship between the condition and the injury.

Among the cases dealing with insurance policy clauses using the "arising out of" terminology, two courts have stated expressly that an injury does not arise out of a specified set of conditions unless it is proximately caused by those conditions. *See Lumbermen's Mutual Casualty Co. v. Logan*, 88 A.D.2d 971, 451 N.Y.S.2d 804 (2d Dep't 1982) (mem.); *United Services Automobile Association v. Aetna Casualty & Surety Co.*, 75 A.D.2d 1022, 429 N.Y.S.2d 508 (4th Dep't 1980) (mem.). The court in *Lumbermen's Mutual Casualty Co. v. Logan*, considering a policy that covered bodily injury caused by an "occurrence and arising out of the ownership, maintenance or use ... of an owned automobile," ruled that a fall in an icy parking lot was not covered because the injury "neither arose from the intrinsic nature of the motor vehicle, as such, nor did the vehicle itself, produce the injury." 88 A.D.2d at 971, 451 N.Y.S.2d at 805. The court noted that "[t]he use of the motor vehicle must be the proximate cause of the injury in the underlying action to come within the ambit of the 'use or operation' clause...." *Id.* In *United Services Automobile Association v. Aetna Casualty & Surety Co.*, the court ruled that an eye injury resulting from a spitball fight between children in a car did not arise out of the ownership, maintenance, operation, or use of the car. The court stated that "[w]here the operation or driving function of an automobile or the condition of the vehicle itself is not the proximate cause of the injury, the occurrence does not arise out of its use or operation...." *Id.* at 1022, 429 N.Y.S.2d at 510.

Though other courts dealing with "arising out of" clauses have not expressed their rulings in terms of proximate causation, a review of the fact patterns reveals that the "arising out of" clause has been held applicable where the injury was proximately caused by the specified condition, *see, e.g., Aetna Casualty & Surety Co. v. Liberty Mutual Insurance Co.*, 91 A.D.2d at 319, 459 N.Y.S.2d at 160, but not where there was no such proximate causation, *see, e.g., General Accident Insurance Co. v. United States Fidelity & Guarantee Insurance Co.*, 193 A.D.2d at 139, 602 N.Y.S.2d at 951.

In *Aetna Casualty & Surety Co. v. Liberty Mutual Insurance Co.*, for example, one insurer had agreed to provide coverage for injuries arising out of the use or loading of a truck, and another insurer had excluded injuries arising out of such use or loading; the court considered whether the explosion of the truck's cargo arose out of the use or loading of the truck. The injuries occurred after the renter of the two-ton truck, though promising not to overload it, had proceeded to load it with 1,000 blasting caps and six tons of explosives. After trial, it was found that the "overloading apparently caused friction between the wheels and the wheel wells which created heat causing the blasting caps to detonate and the dynamite to explode." 91 A.D.2d at 319, 459 N.Y.S.2d at 160. The court had no difficulty in concluding that the damage arose out of the use and loading of the truck. We think it plain that the accident was proximately caused by the overloading.

In *General Accident Insurance Co. v. United States Fidelity & Guarantee Insurance Co.*, 193 A.D.2d at 139, 602 N.Y.S.2d at 951, the court considered a claim under a policy that excluded injuries arising out of the unloading of a truck. The injury occurred when a water softener tank fell off a pushcart operated by the insured's employee who had unloaded the tank from his truck and pushed the cart bearing the tank to the customer's boiler room. Though the accident would not have occurred if the employee had not unloaded the tank from the truck, the court concluded that the injury was not sufficiently connected to the unloading of the truck to be considered as having arisen out of that act. Plainly the injury could not be said to have been proximately caused by the

unloading. *Accord United Services Automobile Association v. Olin*, 178 A.D.2d 528, 577 N.Y.S.2d 447 (2d Dep't 1991) (mem.) (stabbing of passenger of one vehicle by passenger in another vehicle did not arise out of ownership, maintenance, operation, or use of vehicle); *Walters v. Government Employees Insurance Co.*, 66 A.D.2d 779, 779, 410 N.Y.S.2d 663, 664 (2d Dep't 1978) (mem.) ("no rational basis" for finding that a fall while getting out of bed in a trailer attached to a car parked in a campground "arose out of the 'use or operation' of a motor vehicle"). The parties have called to our attention no cases, and we are aware of none, in which a New York court has ruled that an injury that could not be found to have been proximately caused by the specified condition "arose out of" that condition.

In the present case, we reject Landmark's contention that we should read the phrase "arising out of" asbestos removal to mean "occurring while" asbestos was being removed, for such a purely temporal connection would be a relaxation of New York's interpretation of "arising out of" as requiring a relationship tantamount to proximate causation. Such a relaxation would be inconsistent with the principle that insurance policies in general, and coverage exclusions in particular, are to be strictly construed against the insurer.

Given this thrust of New York law and the circumstances of the injuries that are the subject of the Bethlehem claims, we cannot conclude that those injuries arose out of the removal of asbestos. Though the clean-up activities in which Bailey and Samson were engaged did include both the removal of equipment and the picking up of asbestos that had been pulled from the tower walls, their injuries were not caused by, incident to, or even related to the removal of asbestos. Rather, their injuries were dependent solely on their location. Had Bailey and Samson been sent up to the tower solely to remove equipment, they would still have been injured. Further, the tower was not a location that was only, or even primarily, occupied by persons removing asbestos; and had other persons who were not involved in the clean-up been present on the tower, they too would have been injured by the quenching steam. Bethlehem's quenching a load of coke at the time Bailey and Samson were on the tower was an event entirely unrelated to the nature of the work they were then performing.

In sum, we conclude that the injuries in question were not caused by asbestos, nor related to the intrinsic nature of asbestos, nor proximately caused by the removal of asbestos. Hence, they cannot be said to have "aris[en] out of" the removal of that substance.

## CONCLUSION

We have considered all of Landmark's contentions and have found them to be without merit. The judgment of the district court is affirmed.