**Edith LIBUTTI, Doing Business as Lion Crest Stable, a Sole Proprietorship, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 94–CV–1114.

United States District Court, N.D. New York.

Dec. 21, 1995.

Miller, Griffin & Marks, Lexington, KY (Michael Meuser, Frank T. Becker, of counsel), Hinman, Howard & Kattell, Binghamton, NY (Paul T. Sheppard, of counsel), for plaintiff.

U.S. Department of Justice, Tax Division, Washington, DC (Steven E. Cole, George P. Eliopoulos, of counsel), for United States.

## MEMORANDUM, DECISION & ORDER ON RECONSIDERATION

McAVOY, Chief Judge.

## I. INTRODUCTION

This motion seeks reconsideration of the court's order dated October 30, 1995, that denied the plaintiff's motion for litigation costs, including legal fees, pursuant to 26 U.S.C. § 7430. That motion was made following a favorable decision in a bench trial, commenced before this court on March 28, 1995. The government has appealed the court's decision in this case to the Circuit Court of Appeals for the Second Circuit.

## II. BACKGROUND

On July 6, 1994, Edith LiButti, doing business as Lion Crest Stable ("Lion Crest"), brought the racehorse "DEVIL HIS DUE" to Saratoga, New York to run in the Whitney Handicap on August 27, 1994. On August 25, 1994, the United States Internal Revenue Service ("IRS") delivered a Notice of Seizure and Levy to DEVIL HIS DUE's trainer at Saratoga. The levy was made against Edith LiButti d/b/a Lion Crest Stable "as nominee of Robert LiButti to the extent of his interest in the thoroughbred race horse named DEVIL HIS DUE."

On August 26, 1994, Lion Crest Stable and the IRS entered into an agreement which allowed DEVIL HIS DUE to run in the Whitney Handicap race. Lion Crest Stable agreed not to file suit against the IRS under 26 U.S.C. § 7426 until August 30, 1994. Any money DEVIL HIS DUE earned in the Whitney[1] was to be held in escrow until: (1) the government permitted Lion Crest Stables to withdraw all or some of the earnings; (2) Lion Crest Stables obtained a court order allowing it to withdraw the earnings; or (3) Lion Crest Stables and the government entered into a second agreement with regard to the disposition of earnings. On September 2, 1994, the plaintiff commenced this action pursuant to 26 U.S.C. § 7426 seeking a permanent injunction barring the IRS from enforcing a levy that sought to seize a thoroughbred racehorse, DEVIL HIS DUE, to satisfy a tax assessment against Robert LiButti, Edith LiButti's father, and seeking a release of the race winnings of DEVIL HIS DUE that were being held in escrow by the IRS. The plaintiff claimed that the levy has been wrongfully placed on the horse.

The court heard a preliminary injunction motion brought by the plaintiff on September 8 and 9, 1994, which essentially sought to lift the levy until such time as the merits of the 26 U.S.C. § 7426 action could be heard. A preliminary injunction was granted which allowed the horse to continue the racing season, but which denied lifting of the levy.

On October 26, 1994, the government filed suit against Robert Libutti, Joan Libutti (Edith LiButti's mother), and Edith Libutti in the District of New Jersey. The government sought a stay of the Northern District of New York action until final judgment had been entered in the New Jersey action. The court denied this motion.

A three-day bench trial in this action commenced on March 28, 1995. On August 4, 1995, the court issued a Memorandum, Decision, and Order, and a judgment was filed on August 9, 1995, in favor of the plaintiff. The government appealed.

The plaintiff then moved for an award of the costs and fees recoverable under 26 U.S.C. § 7430, and asserted compliance with the statutory requirements. The plaintiff, however, conspicuously failed to mention or address the requirement of exhaustion of administrative remedies. The government contended that the plaintiff was not entitled to such costs and fees. It was the government's position that the plaintiff failed to exhaust the administrative remedies set forth in the Internal Revenue Code, that the plaintiff had failed to meet the net worth require-

---

1. DEVIL HIS DUE placed second, earning approximately $77,000.

ment set forth in the statute, and that the plaintiff had failed to show that the government's position was unreasonable.

In the reconsideration motion before the court, the plaintiff has contested the court's denial of a litigation costs award on the basis of the plaintiff's failure to exhaust administrative remedies. It is the plaintiff's contention that (1) a regulatory exception applies to the exhaustion requirement; and, in the alternative, (2) even if the exhaustion requirement applies, the plaintiff need not have complied because of the application of the "futility doctrine" to this case. The defendant, of course, contends that the court correctly decided the plaintiff's motion in the first instance.

## III. DISCUSSION

### A. Standard For Reconsideration

 "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Hester Indus. v. Tyson Foods,* 160 F.R.D. 15, 16 (N.D.N.Y.1995) (*citing, Larsen v. Ortega,* 816 F.Supp. 97, 114 (D.Conn.1992), *aff'd,* 990 F.2d 623 (1993)); *Nossek v. Brd. of Educ. of the Duanesburg Central School Dist.,* 1994 WL 688298 (N.D.N.Y.1994). Since the plaintiff neither has pointed to a change in the controlling law, nor has presented new evidence not previously available, the plaintiff's motion to reconsider apparently seeks to remedy a clear legal error, or to prevent an obvious injustice. The Court cautions at the outset that, although "clear error" and "preventing injustice" are valid grounds for reconsideration, the parties seeking reconsideration must not use this vehicle as a means to relitigate issues previously decided by the Court, or to attempt to "sway the judge" one last time. *See Saratoga Harness Racing, Inc. v. Veneglia,* 897 F.Supp. 38 (N.D.N.Y. 1995) (citation omitted). With these standards in mind, the Court now turns to the issues raised.

### B. Recovery Of Litigation Costs And Attorneys' Fees Pursuant To 26 U.S.C. § 7430

The basis on which the plaintiff seeks litigation costs is 26 U.S.C. § 7430, which states in relevant part: "In any ... court proceeding which is brought by or against the United States in connection with [actions pursuant to Title 26 of the United States Code], the prevailing party may be awarded ... reasonable litigation costs incurred in connection with such court proceeding." 26 U.S.C. § 7430. Relevant to this motion, "[a] judgment for reasonable litigation costs shall not be awarded ... unless the court determines that the prevailing party [2] has exhausted the administrative remedies available to such party within the Internal Revenue Service." 26 U.S.C. § 7430(b)(1). The definition of "administrative remedies" is left undefined in the statute.

### 1. Exhaustion Of Administrative Remedies

The term "administrative remedies" is defined in the federal regulations interpreting 26 U.S.C. § 7430. Pursuant to the federal regulations, when contesting a levy, for a taxpayer to exhaust his/her administrative remedies, and thereby be entitled later to seek litigation fees, the taxpayer involved in a dispute with the Internal Revenue Service, must "prior to filing an action in a court of the United States ... submit[ ] to the district director ... a written claim for relief" setting forth the basis for such claim, and receive a written denial of that claim. 26 C.F.R. § 301.7430–1(d). At such time, the taxpayer has exhausted his/her administrative remedies. It should be noted that if the district director fails to act upon a written claim within five (5) days, the taxpayer is deemed to have exhausted his/her administrative remedies. *Id.* Having satisfied the minimal requirements of the statute, the taxpayer may then commence an action in a court of law, and subsequent to obtaining a favorable disposition in the action, seek reasonable litigation costs. This is not to say that a case may not be maintained prior to

---

**2.** Allegedly the plaintiff herein.

satisfying 26 U.S.C. § 7430(b)(1), however, failure to comply with that section will by its express terms precludes the imposition of reasonable litigation costs, including attorneys' fees, in favor of the prevailing party.[3]

### i. 26 C.F.R. § 301.7430–1(e)

The federal regulations provide for exceptions to the requirement that a party exhaust the administrative remedies set forth in the C.F.R., such that they "shall be deemed to have been exhausted for the purposes of section 7430." 26 C.F.R. § 301.7430–1(e). In particular, the party may be deemed to have exhausted the administrative remedies if "[t]he Internal Revenue Service notifies the party in writing that the pursuit of administrative remedies ... is unnecessary." 26 C.F.R. § 301.7430–1(e)(1).

▆ The plaintiff first contends that the fact that the plaintiff entered into an agreement with the defendant on August 26, 1994, for the purpose of permitting the horse, DEVIL HIS DUE, to race in the Whitney Handicap during the Saratoga thoroughbred season, "constitutes a written confirmation that pursuit of any other administrative remedy ... was, in the view of the IRS, unnecessary." Plaintiff's Memorandum Of Law In Support Of Motion For Reconsideration at 3. The plaintiff then seems to set forth the terms of the agreement, apparently demonstrating that the plaintiff waived her right to exercise her statutory rights and that the IRS refused to return the horse. However, the plaintiff did not set forth certain critical terms in that agreement. Had the plaintiff done so, the plaintiff would have realized that an argument that the agreement constituted notification by the IRS that the pursuit of administrative remedies was unnecessary, is untenable.

▆ It is an elementary principle of the law of contracts that, rather than parse out select paragraphs or parts of paragraphs from a document to manufacture a desired meaning, the court must look to the document as a whole to determine the intent of the parties. *See Kimmins Indus. Service v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994). The plaintiff has argued that the August 26, 1994 agreement constituted a notification by the IRS that the pursuit of administrative remedies is unnecessary. Although the plaintiff correctly points out that the agreement states that "Ms. LiButti shall refrain from exercising her Statutory Rights ...", the plaintiff fails to include the rest of the sentence that indicates that such refrain was "until at least August 30, 1994." Moreover, the agreement specifically states in another paragraph of the agreement that the "IRS reserves the right to enforce the Levy, and Ms. LiButti reserves the right to exercise her Statutory Rights, on or after Tuesday, August 30, 1994." When viewed from the perspective of the document as a whole, the agreement was clearly a temporary agreement between the parties that permitted the plaintiff to race the horse in a certain race.

There is no expression in the agreement indicating that the IRS relieved the plaintiff from the obligation of pursuing administrative remedies if the plaintiff later wished to seek litigation costs. Moreover, the claim that a later meeting between the parties constitutes such a desire on the part of the IRS is of no moment. The regulation clearly states that the notification must be "in writing". Accordingly, since the foregoing demonstrates no clear error or manifest injustice, the court will not reconsider its earlier decision on these grounds.

### ii. Statutory Versus Regulatory

The plaintiff argues that the court erred by reading the regulatory language of 26

---

**3.** The federal regulations set forth an illustrative and instructive example of proper compliance with the administrative remedies, that fairly can be analogized to the facts of this case:

> *Example 8.* A revenue officer serves an automobile to effect collection of G's liability on January 10. On January 22, H submits a written claim to the district director having jurisdiction over the tax matter claiming that H purchased the automobile from G for an ade-

quate consideration before the tax lien against G arose, and demands immediate return of the automobile. A copy of the title certificate and H's canceled check are submitted with the claim. The claim is received by the district director on January 25. On January 30, H brings a wrongful levy action. H has exhausted the administrative remedies available within the Internal Revenue Service.

26 C.F.R. § 301.7430–1(f).

C.F.R. § 301.7430–1 as controlling rather than conducting an independent assessment of whether the plaintiff has exhausted the administrative remedies as set forth in statutory language of 26 U.S.C. § 7430.

As to exhaustion of administrative remedies requirements in general, the Supreme Court has held that "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). In this case, the Congress, by the express terms of the statute, has specifically mandated that exhaustion is required. *See* 26 U.S.C. § 7430(b)(1). That Congress did not set forth the exact nature of how the requirement could be satisfied, does not relieve the plaintiff of the obligation.

■■■ At the outset, the court iterates that the administrative remedies requirement relates to the subsequent pursuit of litigation fees, not the ability to commence an action and obtain relief. As to the statute, the court notes that the term "administrative remedies" is not defined. A recent Supreme Court decision, however, states that " '[i]t is settled that courts should give great weight' " to agency determinations. *NationsBank of N.C. v. Variable Annuity Life Ins.,* —— U.S. ——, ——, 115 S.Ct. 810, 813, 130 L.Ed.2d 740 (1995). The Court even went so far as to say that if an agency administrator defines a term, that "administrator's judgment [should be given] 'controlling weight.' " *Id.,* at ——–——, 115 S.Ct. at 813–14. Moreover, agency regulations generally have the force of law. *U.S. v. Krieger,* 773 F.Supp. 580, 582 (S.D.N.Y.1991); *U.S. ex rel. Farese v. Luther,* 953 F.2d 49, 52 (3d Cir.1992); *Resolution Trust Corp. v. Home Sav. of America,* 946 F.2d 93, 96 (8th Cir.1991). At a minimum, regulations are entitled to deference by the courts. *New York City Employees' Retirement System v. S.E.C.,* 45 F.3d 7, 12 (2d Cir.1995). Accordingly, since 26 C.F.R. § 301.7430–1 was drafted specifically to define the terms contained in 26 U.S.C. § 7430, it is proper for the court, at least, to give deference to the federal regulation. Even if the court was compelled to embark upon an independent determination of whether the plaintiff had exhausted the administrative remedies, the court would look to 26 C.F.R. § 301.7430–1 for guidance, if for no other reason than to define the terms in the statute.

It is clear to the court that the plaintiff only secured an agreement with the IRS to permit racing DEVIL HIS DUE on a single occasion, but did not obtain any written statement from the IRS that the issue of nomination, the critical issue relating to the levy, was decided. To the contrary, the district counsel, in letters to the plaintiff's attorneys dated September 1, 1994 and September 2, 1994, stated that it was the IRS's "position that [plaintiff's father] has a beneficial interest in the horse named DEVIL HIS DUE." It is also clear from the letters that the IRS refused to proceed with the "offer-in-compromise procedure" relating to the Ms. LiButti's father's tax debt, not the levy, until "the nominee issue has been resolved." The IRS had taken the express position that the critical nominee issue remained to be decided. At that point, the plaintiff was not relieved of the requirement to exhaust administrative remedies. Thus, unless the plaintiff can demonstrate that there is some reason for the court to excuse compliance with the statute as defined in the regulation, the court may properly hold that the plaintiff's failure to comply strictly with the regulation constitutes a failure to exhaust administrative remedies within the meaning of the statute. *See* 26 U.S.C. § 7430(b)(1).

### iii. Futility

The plaintiff argues that the court erred by holding that the plaintiff failed to exhaust administrative remedies because the plaintiff claims that such compliance would have been futile.

Excuse from adherence to the doctrine of exhaustion of administrative remedies has been recognized, essentially, on the basis of futility. *See McCarthy,* 503 U.S. at 147, 112 S.Ct. at 1088. However, the Supreme Court has limited the applicability of the futility excuse to "where the administrative agency is shown to be biased or has otherwise predetermined the issue before it." *Id.,* (citation omitted). The plaintiff cites to two unpublished decisions in support of her position. *See Lindsey v. United States,* 1992 WL

101749 (W.D.Ark.1992); *O'Kane v. United States,* 1990 WL 294241 (D.Idaho 1990).

In *Lindsey,* rather than accept information offered by the plaintiff that could have resolved a levy dispute, the IRS expressly refused to consider relevant information and invited the plaintiff to bring a wrongful levy action in the district court. *Lindsey,* 1992 WL 101749 *1. Significantly, the court applied 26 C.F.R. § 301.7430–1 to the case. The court, however, held that the plaintiff had satisfied the exhaustion of administrative remedies requirement based on the futility of complying with the C.F.R. as proven by the statements of the IRS. In this case, the court agrees that 26 C.F.R. § 301.7430–1 sets forth the administrative remedies available to the plaintiff in the IRS. However, the court cannot point to any statement of the IRS refusing to consider information, or directing the plaintiff to file a wrongful levy action in the district court. In short, the IRS did not demonstrate that pursuing the administrative remedies of 26 C.F.R. § 301.7430–1 would be futile.

In *O'Kane,* the pursuit of administrative remedies was found to be futile when the IRS filed an answer in the district court action, and thus took a position contrary to that of the plaintiff. *O'Kane,* 1990 WL 294241 *1. This court, however, declines to follow the reasoning of the *O'Kane* court.

Under *O'Kane,* a plaintiff could avoid compliance with any administrative remedies in a dispute with the IRS simply by commencing an action and awaiting an answer by the IRS. If the IRS defaulted, the plaintiff would recover. If the IRS answered, the plaintiff would be relieved of the obligation to exhaust administrative remedies because such compliance would have been futile. Such *post hoc* reasoning is contrary to the express terms of 26 C.F.R. § 301.7430–1(d). That subsection states that the plaintiff must comply with the dictates of the section "prior to filing an action in a court of the United States ..." 26 C.F.R. § 301.7430–1(e)(1).

The court agrees with the reasoning in *Rosenbaum v. IRS,* 615 F.Supp. 23 (N.D.Ohio 1985). In *Rosenbaum,* the court applied 26 C.F.R. § 301.7430–1 to the dispute between the IRS and the plaintiff, noting that compliance with the regulation would have required very little effort on the part of the plaintiff. 615 F.Supp. at 25. Moreover, the plaintiff, who was found to have prevailed, was held to compliance with the regulation notwithstanding the fact that the IRS imposed the levy before a thorough investigation. *Id.*

■ In this case, the IRS expressly stated that the nominee issue needed to be resolved. Although the district counsel states in its September 1, 1994 letter that it is the IRS' position that Edith LiButti's father had an ownership interest in the horse, the district counsel also states that "[i]f Mr. LiButti disclaims any ownership ... in the horse then I would suggest that the Service would be unable to evaluate the merits of any offer submitted until the nominee issue is resolved." There is no evidence to suggest that the IRS refused to accept proof relating to the nominee issue. Nor is there any evidence before the court that the district director or district counsel had taken the position that the nominee issue was decided. This amounted to an invitation to the plaintiff to seek such a determination. The court cannot conclude that the government left "the taxpayer no alternative other than a judicial remedy ..." *Weiss v. Commissioner,* 850 F.2d 111, 115 (2d Cir.1988). The plaintiff could have sought a determination through the IRS.

The plaintiff sought to have the matter resolved in the district court, and prevailed. In so doing, however, the plaintiff failed to comply with the minimal requirements of 26 C.F.R. § 301.7430–1(d), which now forecloses the plaintiff from an award of litigation costs. The plaintiff has failed to show ant clear legal error or manifest injustice that will result from the court's October 30, 1995 memorandum-decision and order. Accordingly, the court decision of October 8, 1995 will not be reconsidered.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for reconsideration is DENIED.

**IT IS SO ORDERED.**