TURNER CONSTRUCTION
COMPANY, Plaintiff,

v.

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,
et al., Defendants.

No. 01 Civ. 2899(RWS).

United States District Court,
S.D. New York.

April 30, 2007.

Saxe Doernberger & Vita, P.C., Hamden, CT, By: Edwin L. Doernberger, Kevin P. Dean, for Plaintiff, of Counsel.

Barry, McTiernan & Moore, New York, NY, By: Suzanne M. Halbardier, for Defendants American Manufacturers Mutual Insurance Company and Lumberman's Mutual Casualty Company, of Counsel.

## OPINION

SWEET, District Judge.

Plaintiff Turner Construction Company ("Turner") has moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment on Count One of its Second Amended Complaint ("SAC") against defendants American Manufacturers Mutual Insurance Company ("AMMIC") and Lumberman's Mutual Casualty Company

("LMCC") (collectively, the "Defendants"). The Defendants have also moved for summary judgment dismissing all claims against the Defendants. For the reasons set forth below, the motion of Turner is granted, and the motion of the Defendants is granted in part and denied in part.

### The Parties

Turner is a New York corporation with its principal place of business in New York, New York. Turner entered into a construction management consulting agreement with the Central Synagogue in Manhattan (the "Synagogue") in January 1998 concerning renovation work to be done at the Synagogue as part of an ongoing renovation project there.

Defendants are Illinois corporations with their principal places of business in Long Grove, Illinois. They are the insurers of Trident Mechanical Systems, Inc. ("Trident"), which was the Synagogue's HVAC contractor on the renovation project.

### Prior Proceedings

An action entitled *Wausau Business Insurance Company v. Turner Construction Company*, 99 Civ. 0682 ("*Wausau*"), was filed as a result of a fire which occurred at the Synagogue on August 28, 1998.

To recover amounts paid to the Synagogue under its fire insurance policy, Wausau Business Insurance Company ("Wausau"), as subrogee of the Synagogue, brought the *Wausau* action against Turner, the construction manager; Amis, Inc. ("Amis"), the general contractor; and Aris, the roofing contractor.[1]

The trial in *Wausau* was bifurcated to try liability and the allocation of that liability first, with a second trial to take place as to damages. The liability phase was tried to a jury, which determined liability as follows: Turner, 50%; Aris, 30%; Amis, 15%, Central Synagogue, 5%; Trident, 0%.

A settlement was reached prior to the commencement of the damages portion of the trial, and the following amounts were paid by or on behalf of Turner in settlement of the underlying actions:[2]

*SETTLEMENT:* [3]

| | |
|---|---|
| To Wausau: | $11,760,150.00 |
| To Central Synagogue: | $ 4,159,859.00 |
| To Merrimack Mut. Ins. Co., a/s/o Deluxe 54: | $ 25,000.00 |
| To Nationwide Mut. Ins. Co., a/s/o John Konarski: | $ 5,000.00 |
| To Great Northern Ins. Co.: | $ 5,000.00 |
| TOTAL: | $15,955,009.00 |

*FEES & EXPENSES:*

| | |
|---|---|
| Attorney's fees: | $ 744,506.30 |
| Expenses: | $ 205,171.41 |
| TOTAL: | $ 949,677.71 |

Of the foregoing amounts, all were paid by Turner's insurance companies on behalf of Turner, with the exception of $31,500.00 in expenses which were paid by Turner for

---

1. The Synagogue brought its own action against the Defendants, seeking to recover from the Defendants for damages that were not covered under the Wausau policy. Turner filed a third-party action against Trident; Atkinson Coven Finberger Engineers, LLP, engineers on the project; and Schuman Lichenstein Claman Efron Architects, architects on the project. Wausau and the Synagogue subsequently brought their own claims against Trident, Atkinson Coven Finberger Engineers, Schuman Lichenstein Claman Efron Architects, and Amtex, the electrical contractor for Amis.

2. Each of the other defendants in the case (except Amtex) also contributed to the total settlement.

3. The payments to Merrimack Mutual Insurance Company, Nationwide Mutual Insurance Company, and Great Northern Insurance Company were made to resolve the subrogation claims for property damage incurred by property owners adjoining the Central Synagogue property.

settlement of issues regarding a bill of costs submitted by Trident.

Turner brought this action by complaint dated April 5, 2001, seeking a determination that Kemper Insurance Company was required to defend and indemnify Turner in the *Wausau* action and related actions. The First Amended Complaint was subsequently filed on June 15, 2001, adding AMMIC as a defendant. On February 11, 2002, the Second Amended Complaint was filed, removing Kemper Insurance Company as a defendant and adding LMCC and Nationwide Mutual Insurance Company ("Nationwide"), Amtex's insurer, as defendants. Nationwide has since been terminated as a party in this action.

AMMIC and LMCC, as well as Nationwide, moved in this action for summary judgment to dismiss the SAC.

By opinion of April 29, 2005 (the "April 29 Opinion"), the Defendants' motion was granted, holding that Trident, the named insured on the AMMIC and LMCC insurance policies, had been found not liable for the Synagogue fire in the underlying actions and that this finding was *res judicata*. *Turner Constr. Co. v. Am. Mfg. Mut. Ins. Co.*, No. 01 Civ. 2899(RWS), 2005 WL 1022429, at *10 (S.D.N.Y. Apr.29, 2005). It was also determined that: (1) Turner was an additional insured on the AMMIC and LMCC insurance policies, and (2) Turner had standing to bring the claim against AMMIC and LMCC. *Id.* at *7–8.

In an opinion filed March 22, 2006, the Court of Appeals for the Second Circuit vacated and remanded, holding that Turner is covered under the AMMIC and LMCC policies if Turner's liability arose out of Trident's work, that *res judicata* does not bar Turner's indemnity claim, and that Defendants were not entitled to summary judgment on Turner's defense fees. *Turner Constr. Co. v. Kemper Ins. Co.*, 198 Fed.Appx. 28, 30–32 (2d Cir.2006).

The instant summary judgment motions followed and were heard and marked fully submitted on September 20, 2006.

### The Facts

The facts have been set forth in the Plaintiff's Local Rule 56.1 Statement, the Defendants' Response to the Plaintiff's Rule 56.1 Statement, the Defendants' Rule 56.1 Statement, and the Plaintiff's Response to the Defendants' Rule 56.1 Statement and are not in dispute except as noted.

On January 26, 1998, Turner entered into a construction management consulting agreement with the Synagogue, a landmark synagogue at the corner of Lexington Avenue and 55th Street in Manhattan, for renovations taking place at the Synagogue, including installation of an air conditioning system. Turner was engaged as the owner's representative and agent at the Synagogue Phase III work site. This entailed monitoring and administering the building of the project and assisting the Synagogue in making sure the construction sequence was performed.

Article 6 of the agreement between Turner and the Synagogue provided in relevant part:

> [T]he Owner [Central Synagogue] shall name the Construction Manager [Turner] an additional insured party or cause its Contractors to so name the Construction Manager [Turner] an additional insured party on the Contractor's insurances.

(Pl.'s Ex. 5 at 4.)

Trident contracted with the Synagogue to perform and provide all heating, ventilation and air conditioning ("HVAC") installation services and material for the project. Therefore, the installation of the air conditioning units was part of Trident's work. The air conditioning units were installed in

the front towers of the Synagogue by removing the existing roof, installing the units, and then installing a new roof on the towers.

In accordance with Article 6 of the Turner–Synagogue agreement, the agreement between the Synagogue and Trident provided as follows:

Before commencing the Work, the Contractor [Trident] shall procure and maintain, at its own expense, until completion and final acceptance of the Work at least the following insurance from insurance companies satisfactory to the Owner and Turner:

. . .

2. COMPREHENSIVE GENERAL LIABILITY INSURANCE INCLUDING COMPLETED OPERATIONS, CONTRACTUAL LIABILITY INSURANCE AGAINST THE LIABILITY ASSUMED HEREINABOVE, and including CONTRACTORS PROTECTIVE LIABILITY INSURANCE if the Contractor sublets to another all or any portion of the Work, with the following minimum limits: Combined Single Limit $5,000,000.00 . . .

The Owner and Turner shall be named as additional insureds under these policies of insurance.

(Joint Ex. 18 at 9.)

Pursuant to the terms of its agreement with the Synagogue, Trident provided a Certificate of Insurance which named Turner as an additional insured under both: (1) the general liability policy number BINDER 55733 for a general aggregate of $2,000,000, effective June 30, 1998, through June 30, 1999 (the "AMMIC policy"); and (2) the excess liability policy number BINDER 55734 for $10,000,000, effective June 30, 1998, through June 30, 1999 (the "LMCC policy") (referred to collectively as "the Policies").

The AMMIC policy had an extended general liability endorsement which amended the definition of "who is an insured" as follows:

The following paragraph is added to WHO IS AN INSURED (Section II):

6. Any person or organization to whom or to which you are obligated by virtue of a written contract, agreement or permit to provide such insurance as afforded by this policy is an insured, but only with respect to liability arising out of:

a. "Your work" for that insured by you;

b. Permits issued by state or political subdivisions for operations performed by you; or

c. Premises you own, rent, occupy or use[.]

This provision does not apply unless the written contract or agreement has been executed, or the permit has been issued, prior to the "bodily injury," "property damage," "personal injury" or "advertising injury."

(Joint Ex. 23 at AMMIC–7–8.)

The LMCC policy provided the following definition of an insured:

Any person or organization to whom or to which you are obligated by virtue of a written contract to provide such insurance as afforded by this Coverage Part is an insured, but only with respect to liability arising out of "your work," "your product" and to property owned or used by you.

(Joint Ex. 24 at Lumbermens–33.)

On August 28, 1998, a fire occurred at the Synagogue.

Ferenc Petho ("Petho"), a Turner employee, was the owner's representative on site and responsible for reviewing the progress of the work, as well as the quality

of the work being performed. Petho was aware that the building was built in the late 1800's and the exposed timbers were made of wood.

The Synagogue fire was started by an employee of Aris, the roofing subcontractor, who was working on the roof that had been cut out for the installation of the air conditioning units installed by Trident. According to the Defendants, on the day of the fire, Jose Santos ("Santos"), an Aris employee, was using the propane torch which started the fire. He did not possess a certificate of fitness to use a propane torch, nor did his co-worker, also an Aris employee. They were working on the roof, nailing the base sheets, applying the layers, and then the torch was used on the modified or top layer.

The Defendants assert further that on the day of the fire, Petho was on the north roof and saw material being torched with the flame of a torch. Later in the day, Petho smelled smoke and reported this to the security personnel. Petho then went up the scaffolding and noticed smoke, after which he went into the high attic to investigate where he observed more smoke. When he emerged from the attic, Petho gave his cellphone to an Amis employee and instructed the employee to call his supervisor.

When Santos and his co-worker smelled smoke and saw smoke coming out from behind the flashing they had just installed, they chopped away some of the wall. They took a fire extinguisher or water bottle and tried unsuccessfully to extinguish the fire.

The roof exhaust fans, which had been installed at the peak of the roof by Trident employees, had been turned on and accelerated the fire laterally through the building. The fans were wired by Amtex, an Amis subcontractor.

The electrical panels for the fire alarm system's alarm connections had been removed by Trident employees and an Amtex employee. The fire alarm panel was designed to insure .that the operation of the fans ceased when there was a fire. There was testimony that the Synagogue turned off the alarm system because of false alarms. Trident had been instructed to assign a fire guard or fire watch.

There was testimony that the fans were running on the morning of the fire. There was no evidence that the fans had been turned off that day. There was evidence that the operation of the fans accelerated the fire, and that but for the operation of the fans, the fire would have been a minor incident.

The trial testimony did not establish who turned on the fans on the day of the fire.

### Discussion

### 1. Summary Judgment

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 338 (2d Cir.2004); *see generally* 11 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 56.11 (3d ed. 1997 & Supp.2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence

may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal citations omitted). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) ("[T]he mere existence of factual issues-where those issues are not material to the claims before the court-will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993). The non-movant cannot escape summary judgment, however, "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture," *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); *accord Giordano v. City of New York*, 274 F.3d 740, 749–50 (2d Cir.2001), particularly where such speculation is unsubstantiated. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). In other words, the non-movant must invoke more than just "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348. In order to defeat a motion for summary judgment, the non-moving party must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Byrnie*, 243 F.3d at 101; *Scotto*, 143 F.3d at 114.

## 2. Plaintiff's Motion for Summary Judgment is Granted

Plaintiff has moved for summary judgment on Count One of the SAC, which alleges that the Defendants failed and/or refused to defend and indemnify Turner under the Policies and that this breach of contract damaged Turner. (SAC ¶¶ 32–34.) The question before the Court is whether Turner's liability "arose out of" Trident's work.

The Court of Appeals' opinion states that the issue to be resolved on remand is as follows:

[T]he only contract question at issue in Turner's suit is whether its liability "arose out of" Trident's work in providing a heating, ventilation, and air conditioning system for Central Synagogue .... while we conclude that the jury verdict favorable to Trident on the issue of negligence cannot, by itself, absolve the Insurers of indemnification obligations to Turner, we express no opinion as to whether the Insurers might nevertheless be entitled to an award of summary judgment on an alternative ground, specifically, that Turner fails to adduce sufficient evidence to satisfy our more expansive construction of the contract's "arising out of" provision. We leave this matter to further review by the district court.

*Turner Constr. Co.*, 198 Fed.Appx. at 30–31.

### a. Turner's Liability Arose Out of Trident's Work

The causal relationship between the injury and the covered risk necessary to trigger an additional insured endorsement is very broad because the "arose out of" phrase "focuses not upon the precise cause of the accident ... but upon the general nature of the operation in the course of which the injury was sustained." *J. Michael Orifici & Assocs., Inc. v. Liberty Mut. Ins. Co.*, 159 F.3d 1347, 1998 WL 514333, at *1 (2d Cir.1998) (quoting *Consol. Edison Co. v. Hartford Ins. Co.*, 203 A.D.2d 83, 610 N.Y.S.2d 219 (App. Div. 1st Dep't 1994)).

The Court of Appeals' opinion states that New York law is as follows:

> The New York Court of Appeals has held that the phrase "arising out of" is "ordinarily understood to mean originating from, incident to, or having connection with." *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472,

805 N.Y.S.2d 533, 536, 839 N.E.2d 886 (2005) (quoting *Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.*, 91 A.D.2d 317, 320, 459 N.Y.S.2d 158, 160 (4th Dep't 1983)). Thus, the phrase "requires only that there be *some* causal relationship between the injury and the risk for which coverage is provided." *Id.* (emphasis added); *see also Consolidated Edison Co. of New York v. Hartford Ins. Co.*, 203 A.D.2d 83, 83, 610 N.Y.S.2d 219, 221 (1st Dept.1994) (noting that the phrase "arising out of" in the context of an additional insured clause in an insurance policy "focuses not upon the precise cause of the accident ... but upon the general nature of the operation in the course of which the injury was sustained").

*Turner Constr. Co.*, 198 Fed.Appx. at 30.

Courts have rejected proximate causation tests when determining whether coverage "arises out of" work performed by the named insured. *See, e.g., Ins. Co. of N. Am. v. Liberty Mut. Ins. Co.*, Nos. 94 Civ. 637(LLS) & 94 Civ. 885(LLS), 1994 WL 150818, at *2 (S.D.N.Y. Apr. 19, 1994). Furthermore, Courts have found coverage "arising out of" a subcontractor's work in cases where the proximate cause of the injury is arguably not the actions of the named insured. *See, e.g., Orifici*, 1998 WL 735817 at *1 ("The injury need not be sustained while actually engaging in the work of the named insured...."); *Landpen Co. L.P. v. Maryland Cas. Co.*, No. 03 Civ. 3624RJHHBP, 2005 WL 356809 (S.D.N.Y. Feb.15, 2005) (finding injury resulting from student's opening of a window to "arise out of" the school's "operations"); *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655, 458 N.Y.S.2d 518, 519, 444 N.E.2d 982, 983 (1982) (indemnifying general contractor as additional insured for subcontractor's employee's injury caused by a different subcontractor); *Tishman Constr. Corp. Of New York v. CNA Ins. Co.*, 236

A.D.2d 211, 652 N.Y.S.2d 742, 744 (App. Div. 1st Dep't 1997) ("What is required to trigger the endorsement's coverage is an injury giving rise to liability on the part of plaintiffs ... resulting from the work performed by [the named insured] for or on behalf of plaintiffs at the site."); *Aetna Cas. & Surety Co. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, PA.*, 228 A.D.2d 385, 645 N.Y.S.2d 5, 6–7 (App. Div. 1st Dep't 1996) (finding worker's fall down hoist shaft triggered additional insured endorsement even though named insured was not operating hoist at time of accident); *Hartford Ins. Co.*, 610 N.Y.S.2d at 221 (covering employee injured by steam valve while removing debris on worksite of project unrelated to the valve); *Brooklyn Hosp. Ctr. v. One Beacon Ins.*, 799 N.Y.S.2d 158, 2004 WL 2913774, *3–4 (Sup.Ct.2004) (finding subcontractor employee's injury covered under contractual indemnification of additional insured despite subcontractor's lack of negligence).

Courts have also found coverage "arising out of" a subcontractor's work even when injuries were solely attributable to the additional insured's negligence. *See, e.g., Orifici*, 1998 WL 735817 at *1 ("Whether the negligence of the additional insured caused the accident is immaterial to the determination of whether the insurance policy covers the injuries."); *Consol. Edison Co. of New York, Inc. v. U.S. Fid. & Guar. Co.*, 266 A.D.2d 9, 697 N.Y.S.2d 620, 621 (App. Div. 1st Dep't 1999) ("Nor does ... any resulting implication that Con Edison was negligent in maintaining an unsafe workplace for Hallen's employees[ ] have any bearing on the issue of USF & G's obligations to Con Edison under the additional insured endorsement[.]"); *Lim v. Atlas–Gem Erectors Co., Inc.*, 225 A.D.2d 304, 638 N.Y.S.2d 946 (App. Div. 1st Dep't 1996) ("[T]he fact that the cause of the injury may have been the result of LMB's negligence, or that of any other "Additional Insured" for that matter, is immaterial with respect to the issue of whether LMB is covered by the policy in question."); *Hartford Ins. Co.*, 610 N.Y.S.2d at 221 ("The fact that the cause of the injury may have been [the additional insured's] fault, or due to [the additional insured's] negligence, is immaterial[.]").

In *Brooklyn Hospital Center v. One Beacon Insurance*, 799 N.Y.S.2d 158, 2004 WL 2913774 (Sup.Ct.2004), the court was presented with issues similar to those presented here, and held that a policy provided coverage to an additional insured for liability "arising out of" the work of a named insured that was found to be absolved of negligence in the underlying action. McNeil, an employee of Donaldson Acoustics, a subcontractor, sued Brooklyn Hospital and Barr, the construction manager, when he was injured as a result of a fall from a ladder owned by S.J. Electric, Inc., another subcontractor on the project owned by Brooklyn Hospital. *Id.* 2004 WL 2913774 at *1. In turn, Brooklyn Hospital and Barr brought a third-party complaint against Donaldson Acoustics and S.J. Electric based upon common law and contractual indemnification and breach of contract to obtain insurance. *Id.* at *2. In the underlying *McNeil* action, the court dismissed all claims against S.J. Electric, finding, *inter alia*, that it did not supervise McNeil or authorize use of its ladder. *Id.*

Brooklyn Hospital and Barr then brought a declaratory judgment action against American Motorist Insurance Company ("AMICO") seeking a declaration that AMICO was required to defend and indemnify them as additional insureds on a policy issued by AMICO to S.J. Electric. *Id.* The AMICO policy provided coverage to the Hospital and Barr "with respect to liability arising out of ... [SJ's] work." *Id.* at *4. On motions for summary judgment, the court determined that the

hospital and Barr were entitled to both defense and indemnity from AMICO in the *McNeil* action, even though S.J. Electric was not found negligent in the *McNeil* action. *Id.*

In *J. Michael Orifici & Associates, Inc. v. Liberty Mutual Insurance Company,* 159 F.3d 1347, 1998 WL 514333, Orifici, the project manager, was named an additional insured under an elevator subcontractor's policy with Liberty Mutual for claims arising out of the subcontractor's work. *Id.* 1998 WL 514333 at *1. On the way to the construction site, a worker slipped, grabbed a second worker, and together the two workers fell down an elevator shaft. *Id.* The Court of Appeals affirmed the district court's finding that the accident "arose out of" the subcontractor's work and thus Liberty was required to indemnify the plaintiff as an additional insured under the policy. *Id.* at *3.

Defendants' efforts to distinguish the cases cited by the Plaintiff are generally unavailing. First, Defendants attempt to distinguish certain cases based on the courts' holding that a determination of indemnity is premature if it precedes a finding of liability on the part of the additional insured. (Defs.' Mem. in Opp'n, Sept. 5, 2006, 2–3.) Turner's liability has already been determined by a jury in the underlying action. *See supra.*

Second, the Defendants assert that there can be no duty to indemnify if the named insured is not found to be liable, citing *Consolidated Edison Co. of New York, Inc. v. U.S. Fidelity & Guaranty Co.,* 266 A.D.2d 9, 697 N.Y.S.2d 620, and *Petracca v. Capri Construction Corp.,* 264 A.D.2d 829, 695 N.Y.S.2d 403 (App. Div.2d Dep't 1999). (Defs.' Mem. in Opp'n 3.) However, the Court of Appeals' opinion made clear that the only issue on remand is whether Turner's liability "arose out of" Trident's work; Trident's liability is imma-

terial for the purpose of considering these motions. Neither of these cases cited by the Defendants is instructive on the Defendants' duty to indemnify Turner.

Third, the Defendants assert that *Brooklyn Hospital Center,* 799 N.Y.S.2d 158, 2004 WL 2913774, is distinguishable because it enforced a contractual indemnification obligation. (Defs.' Mem. in Opp'n 4.) Yet the distinction is less than clear, since the instant action also involves a contractual indemnification obligation.

Fourth, although the Defendants have sought to distinguish the subcontractor's employee's injury cases cited by Turner (Defs.' Mem. in Opp'n 4), these cases all stand for the proposition that liability of a general contractor can arise from the non-negligent work of a subcontractor where the subcontractor's work is involved or implicated in the injury. That an injured employee is actively on the job does not change the "arising out of" analysis, which "focuses not upon the precise cause of the accident, as defendants urge, but upon the general nature of the operation in the course of which the injury was sustained." *Hartford Ins. Co.,* 610 N.Y.S.2d at 221.

Here, Trident was the HVAC contractor for the project. The fire was started by an employee of the roofing subcontractor, who was working on the roof that had been cut out for the installation of the air conditioning units installed by Trident. Furthermore, operation of the roof exhaust fans installed by Trident aided the spread of the fire. Also, Trident participated in disabling one of the fire alarm systems.

Turner's liability for the resulting property damage at the Synagogue thereby arose out of, or was connected to, Trident's work, even though Trident was held not to be negligent. The resulting damages, for which Turner was held liable, were inci-

dent to and had connection with Trident's work, which was insured by the Policies.

### b. Defendants Had a Duty to Defend Turner

"The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim...." *Frontier Insulation Contrs., Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868 (1997). Thus, the duty to defend is broader than the duty to indemnify. *Id.* at 985, 690 N.E.2d at 869.

In overturning summary judgment in favor of the Defendants on their duty to defend, the Court of Appeals held that the "proper resolution of [the Defendants' duty to defend] is clear.... For reasons already discussed, this claim would be covered if Turner's actions 'arose out of' Trident's work, whether or not that work was itself negligently performed." *Turner Constr. Co.*, 198 Fed.Appx. at 31–32.

Since the named insured's liability is not a condition of coverage for liability "arising out of" Trident's work, it has been determined that Turner's liability arose out of Trident's work, and as the tort complaint filed by the Synagogue alleged that "[t]he fire at Central Synagogue on August 28, 1998[,] occurred as a result of the negligent acts and omissions of defendant Turner Construction" (Joint Ex. 19 at 7–8), the Defendants had a duty to defend Turner.

### c. Turner Is Entitled to Damages

As set forth above, in the present case, the Defendants breached their duty to defend Turner as an additional insured under the Policies. The Defendants must therefore reimburse Turner for reasonable attorneys' fees and necessary costs incurred by Turner in the defense of the underlying actions. *See Sucrest Corp. v. Fisher Governor Co., Inc.*, 83 Misc.2d 394, 371 N.Y.S.2d 927, 939–40 (N.Y.Sup.Ct. 1975). Additionally, under New York law, the awarding of interest on breach of contract claims, including breach of third-party insurance policies, is non-discretionary. *See* N.Y. C.P.L.R. § 5001 (McKinney 2007); *Langenberg v. Sofair*, No. 03 Civ. 8339(KMK)(FM), 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 7, 2006); *Hedaya Home Fashions, Inc. v. Am. Motorists Ins. Co.*, 12 A.D.3d 639, 786 N.Y.S.2d 86, 87 (App. Div.2d Dep't 2004). The amount of prejudgment interest to be awarded pursuant to a breach of contract claim is nine percent per annum. *See* N.Y. C.P.L.R. § 5004 (McKinney 2007); *Langenberg*, 2006 WL 3518197, at *7.

Defendants are also obligated to reimburse Turner for any reasonable settlement amount paid in the underlying actions:

> In addition to recovery of reasonable counsel fees and necessary expenses incurred in defense of the underlying negligence action, it is well settled that where an insurer unjustifiably refuses to defend, the insured may make a reasonable settlement or compromise of the injured party's claim, and will thereafter be entitled to reimbursement from the carrier, despite the fact that the policy purports to avoid liability for settlements made without the insurer's consent.

*Sucrest Corp.*, 371 N.Y.S.2d at 940 (citations omitted). Furthermore:

> In order to recover the amount of settlement from the insurer, the insured need not establish actual liability to the parties with whom it settled, "so long as ... a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of

possible recovery and degree of probability of claimant's success against the [insured]."

*Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 713 F.Supp. 694, 698 (S.D.N.Y.1989) (quoting *Luria Bros. & Co. v. Alliance Assurance Co., Ltd.*, 780 F.2d 1082, 1091 (2d Cir.1986)). Where, as here, a settlement "occurred during trial, following lengthy and protracted litigation and only after extensive negotiations and conferences ... both before and during trial of the action," courts have found the amount of the settlement to be reasonable and not exorbitant. *Sucrest Corp.*, 371 N.Y.S.2d at 940.

▮ Defendants have contended that their defense obligation is capped at just one-fourth of the defense costs and that post-Trident settlement attorneys' fees are not covered. However, under New York law, defense costs are separate and apart from an insurer's duty to indemnify. *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985) ("The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person."). *New York City Hous. Auth. v. Commercial Union Ins. Co.*, 289 A.D.2d 311, 734 N.Y.S.2d 590 (Sup.Ct. 2001) ("While the duty to defend is based on the allegations in the complaint, the duty to indemnify is based on whether the loss is covered by the policy."). The Defendants are therefore liable for reasonable attorneys' fees and necessary expenses, even if they extended beyond the jury verdict in the case.

There is no dispute that the AMMIC policy had a general limit of at least $1,000,000,[4] the LMCC policy had a limit

of $10,000,000, and the *Wausau* action on behalf of Trident was settled for $1,250,000 (Joint Ex. 25). Therefore, the *Wausau* settlement on behalf of Trident exhausted the limits of the AMMIC policy and partially depleted the LMCC policy. However, the LMCC policy specifically states: "In the event the duty of the underlying insurer to defend the insured against a 'suit' ceases solely because the applicable limit of insurance is used up in the payment of judgments or settlements, then we shall assume the duty for such defense." (Joint Ex. 24 at Lumbermens–25.)

Accordingly, based on the foregoing analysis, Turner is entitled to summary judgment granting the relief sought in relation to Count One of the SAC, including indemnification and the costs of its defense.

### 3. The Defendants' Motion for Summary Judgment is Granted in Part and Denied in Part

Defendants have moved for summary judgment to dismiss all claims in the SAC against the Defendants. For the reasons discussed below, the Defendants' motion is granted with respect to Counts Two and Three of the SAC and denied with respect to Count One of the SAC.

#### a. Turner Is an Additional Insured of the Policies

Although the Defendants continue to argue that Turner is not an insured under the Policies (Defs.' Mem. in Supp. 14), this Court has already ruled that Turner is an insured under the Policies. *See Turner Constr. Co.*, 2005 WL 1022429, at *7. The Defendants did not appeal this ruling: "The district court held—and the parties

---

4. The Certificate of Insurance indicates the limits of the AMMIC policy are as follows: (1) general aggregate—$2,000,000; (2) each occurrence—$1,000,000; (3) fire damage—$50,000. (Joint Ex. 20.)

do not dispute—that AMMIC and its excess insurer LMCC were obligated under this provision to provide insurance to Turner pursuant to the insurance obligations incurred by Trident in its contract with Central Synagogue." *Turner Constr. Co.,* 198 Fed.Appx. at 29.

■ "The law of the case doctrine holds that 'a legal decision made at one stage of litigation, *unchallenged in a subsequent appeal when the opportunity to do so existed,* becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.'" *U.S. v. Hussein,* 178 F.3d 125, 130 (2d Cir.1999) (quoting *N. River Ins. Co. v. Phila. Reinsurance Corp.,* 63 F.3d 160, 164 (2d Cir.1995)).

It is therefore controlling law of the case that Turner is an insured under the Policies.

### b. Turner's Liability Arose Out of Trident's Work and the Duty to Defend Was Triggered

Defendants' motion is based on its interpretation of the Policies, which is the obverse of the issues decided above. Accordingly, the Defendants' motion to dismiss is denied as to Count One on the basis of the conclusions stated above.

### c. The Claims Pertaining to the Trident Settlement Are Dismissed

■ The Defendants have also sought to dismiss Counts Two and Three of the SAC, which are based on the Trident settlement. (Defs.' Mem. in Supp. 17.) Turner did not appeal the Court's earlier decision to dismiss these claims, instead limiting its appeal to the granting of summary judgment in favor of the Defendants on Turner's claimed rights to indemnification and defense in Count One of the SAC. *See Turner Constr. Co.,* 198

Fed.Appx. at 29. Therefore, because this ruling was unchallenged by Turner on appeal, it is controlling law of the case that the Trident settlement does not constitute an illegal Mary Carter agreement and that such settlement did not unfairly reduce or limit Turner's coverage under the Policies. *See Hussein,* 178 F.3d at 130; *see also Wausau Bus. Ins. Co. v. Turner Constr. Co.,* 151 F.Supp.2d 488, 492 (S.D.N.Y.2001) (holding that Trident settlement is not an illegal "Mary Carter agreement"); *Wausau Bus. Ins. Co. v. Turner Constr. Co.,* No. 99 CIV. 0682(RWS), 2001 WL 604188, at *2–3 (S.D.N.Y. June 4, 2001) (same).

Accordingly, based on the foregoing analysis, the Defendants are not entitled to summary judgment on Count One, but are entitled to summary judgment on Counts Two and Three of the SAC.

### Conclusion

For the reasons set forth above, the motion for summary judgment by Turner and the related relief sought by Turner is granted as to Count One of the SAC. In addition, the motion by AMMIC and LMCC is granted as to Counts Two and Three and denied as to Count One. Counts Two and Three of the SAC are therefore dismissed.

Submit judgment on notice.

It is so ordered.