Fireman's Fund Ins. Co. v State Natl. Ins. Co. (2019 NY Slip Op 09399)





Fireman's Fund Ins. Co. v State Natl. Ins. Co.


2019 NY Slip Op 09399


Decided on December 26, 2019


Appellate Division, First Department


Kapnick, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

John W. Sweeny, Jr., J.P.
Rosalyn H. Richter
Barbara R. Kapnick
Cynthia S. Kern
Anil C. Singh, JJ.


160195/15 9887 

[*1]Fireman's Fund Insurance Company, et al., Plaintiffs-Respondents, —
v
State National Insurance Company, Defendant-Appellant.



Defendant appeals from an order of the Supreme Court, New York
County (Nancy M. Bannon, J.), entered July 10, 2018, which granted plaintiffs' motion for summary judgment declaring that they are additional insureds under an insurance policy issued by defendant to nonparty Upgrade, and are entitled to coverage under that policy in connection with the underlying personal injury action, and that the policy is primary, and so declared, and denied defendant's cross motion for summary judgment, inter alia, declaring that it is not obligated to defend or indemnify plaintiffs in the underlying action.




Stonberg Moran LLP, New York (Sherri N. Pavloff of counsel) and Farber Brocks & Zane L.L.P., Garden City (Tracy L. Frankel of counsel), for appellant.
Kritzer Law Group, Smithtown (Karl Zamurs of counsel), for respondents.



KAPNICK, J.


At issue in this appeal is whether plaintiffs Windsor Apartments, Inc. (Windsor) and Argo Real Estate, LLC (Argo) are additional insureds under a policy issued by defendant State National Insurance Company (State National) to nonparty Upgrade Contracting Company, Inc. (Upgrade), arising out of the operations of Upgrade in connection with an underlying personal injury action. Because the language of the additional insured endorsement must be construed [*2]broadly, the motion court correctly held that plaintiffs Windsor and Argo are additional insureds under the policy, and that the coverage provided under that policy is primary.
The underlying personal injury action involved a trip and fall in October 2014 at premises owned by plaintiff Windsor and managed by plaintiff Argo. Prior to the accident, Windsor had contracted with Upgrade to perform "exterior restoration of exposed concrete catwalks . . . and other repairs" in connection with a renovation project at the premises to restore the outside passageways on each floor of the building. Upgrade's work had been completed prior to the accident. The contract called for Upgrade to waterproof the walking surfaces including the catwalks, but did not obligate Upgrade to choose the paint color for the waterproofing project. The contract required Upgrade to obtain insurance for its work and to name Windsor, Argo, the architect, and others specified in the contract as additional insureds on a primary basis. The Upgrade contract also required Upgrade to indemnify and hold harmless the owner, its agents, and employees "from . . . all claims, losses, damages or liability arising out of or in connection with the operations and performance of the Work specified under this Contract."
Defendant State National issued a commercial general liability (CGL) policy to Upgrade during the relevant time period. The policy contained a "Blanket Additional Insured" Endorsement that limited coverage to operations performed by or on behalf of Upgrade:
"It is agreed that this Policy shall include as additional Insureds any person or organization to whom the Named Insured [Upgrade] has agreed by written contract to provide coverage, but only with respect to operations performed by or on behalf of the Named Insured and only with respect to occurrences subsequent to the making of such written contract."
The State National policy also stated that its coverage was primary, with exceptions not applicable here, for damages arising out of the premises or operations for which an entity is added as an additional insured.
The policy issued by plaintiff Fireman's Fund Insurance Company (Fireman's) to Windsor and Argo provided that coverage was excess when its insureds, Windsor and Argo, have other primary insurance available to them covering liability for damages arising out of the premises or operations for which they have been added as an additional insured.
In 2015, Mary Jane Schudde commenced the underlying action against Windsor, Argo (and eventually against the architectural firm [Bertolini] as well) in Supreme Court, Orange County, alleging that she sustained injuries when she fell while attempting to pass through a door leading from an interior vestibule to an outdoor passageway on the 14th floor of the subject premises. There was a single step down from the vestibule to the passageway. The complaint alleged negligence against Windsor for the lack of color differentiation on the flooring surfaces, thereby creating an illusion of a flat surface, specifically as follows:
"[I]n painting the surface beyond the threshold strip of the aforesaid door, the riser and the passageway floor with the same high solid battleship gray paint creating the exact color and texture of all surfaces in an area where there is a change in elevation, where the riser height is relatively low causing an individual with normal depth perception to be less likely to perceive the change in elevation quickly enough to accommodate that person's step forward and under circumstances where the change of elevation occurs a very short distance from the door threshold onto the passageway surface rendering the change in elevation not immediately apparent . . .; in failing to incorporate visual clues at the leading edge of the threshold step; in failing to place a sign so as to warn of the elevation change when leaving the vestibule onto the passageway; in failing to resurface or paint the tread and passageway with contrasting colors; in failing to have installed on the nosing or leading edge of the tread so as to be viewable in de[s]cent a coloring identifying a step or change in elevation."
Windsor and Argo commenced a third-party action for contractual indemnification against Upgrade and the architectural firm.
Fireman's third-party administrator tendered the defense and indemnification of Windsor and Argo to State National on July 6, 2015, alleging that Upgrade changed the existing contrasting colors on the steps and the catwalks and painted them the same color [FN1]. After the third-party administrator provided a copy of the Upgrade contract and photographs of the accident site, State National refused tender on September 11, 2015 on the ground that, among other things, it did not appear that Upgrade was responsible for choosing the paint colors.
By summons and complaint dated October 5, 2015, Windsor and Argo (and their insurer Fireman's) commenced this declaratory judgment action, seeking additional insured coverage for the underlying action. Discovery in the underlying action revealed that Upgrade performed masonry, roofing and waterproofing, and that Upgrade had bid on the specifications provided for in the project after the waterproofing product to be used - "Kemper Waterproofing System" - had already been chosen. Kemper is a grainy, multi-layer process in which two clear membranes are applied, topped by a sealer that, in this instance, was battleship gray in color. Upgrade provided a sample board with a final gray coat on it that was shown to the building's board of directors for final approval.
In July 2017, all of the defendants in the personal injury action moved for summary judgment dismissing the complaint, and Upgrade moved for summary judgment dismissing the third-party complaint. By decision and order dated September 25, 2017, Supreme Court, Orange County denied defendants' motions but granted summary judgment to Upgrade and dismissed the third-party complaint. Regarding the claim for common law indemnification, the court held that because Schudde's claim against Windsor was predicated solely on Windsor's own negligence, Windsor could not obtain common-law indemnification from Upgrade. It also dismissed the claim for contractual indemnification, noting that Upgrade had simply followed the architect's plans and specifications to waterproof the entire passageway in one color and that there had been no proof of negligence on the part of Upgrade.
Following discovery in this declaratory judgment action, plaintiffs moved for summary judgment and a declaration that State National (Upgrade's insurer) must provide additional insured coverage to Windsor and Argo. Defendant cross-moved for summary judgment seeking a declaration that it was not obligated to defend and indemnify Windsor or Argo because they are not additional insureds under the policy in light of Supreme Court's grant of summary judgment to Upgrade dismissing the third-party complaint in the Schudde action.
By order dated July 9, 2018, Supreme Court granted plaintiffs' motion for summary judgment and denied defendant's cross-motion for summary judgment. The court reasoned that the additional insured endorsement required only that the accident arose from the work performed by Upgrade, not that the injuries were caused by that work. It concluded that notwithstanding dismissal of the third-party complaint against Upgrade in the underlying action, Windsor and Argo are additional insureds because the accident "arose out of" Upgrade's operations of painting the steps and the floor where plaintiff fell.
The broadly worded additional insured endorsement in Upgrade's policy provides coverage to Windsor and Argo "with respect to operations performed by or on behalf of" Upgrade. The endorsement in Worth Constr. Co., Inc. v Admiral Ins. Co. (10 NY3d 411 [2008]), relied upon by appellant, was similar in that it provided coverage to the general contractor, Worth, with respect to subcontractor Pacific's operations, in constructing a staircase in an apartment complex. However, the facts of that case are significantly distinguishable. The plaintiff in the Worth underlying personal injury action was an ironworker. He alleged that he slipped on fireproofing that had been installed on the completed staircase by a different subcontractor (not Pacific, the named insured). By its own admission, Worth had conceded that [*3]the accident did not arise out of Pacific's work or operations and agreed that its third-party claim against Pacific should be dismissed (id. at 414-415). The Court thus held that Worth was not an additional insured. While noting that "[g]enerally, the absence of negligence, by itself, is insufficient to establish that an accident did not arise out of' an insured's operations" and that "[t]he focus of a clause such as the additional insured clause here is not on the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained'" (id. at 416 [internal citations omitted]), the Court concluded that Worth was not covered under Pacific's policy:
"Here, it is evident that the general nature of Pacific's operations involved the installation of a staircase and handrails. An entirely separate company was responsible for applying the fireproofing material. At the time of the accident, Pacific was not on the job site, having completed construction of the stairs, and was awaiting word from Worth before returning to affix the handrails. The allegation in the complaint that the stairway was negligently constructed was the only basis for asserting any significant connection between Pacific's work and the accident. Once Worth admitted that its claims of negligence against Pacific were without factual merit, it conceded that the staircase was merely the situs of the accident. Therefore, it could no longer be argued that there was any connection between Murphy's accident and the risk for which coverage was intended" (id.).
Here, however, in contrast, the waterproofing was applied by Upgrade, not a different contractor, and the pathway was not just the situs of the accident. Rather, plaintiff alleges that she fell because of the pathway, specifically because the waterproofing applied by Upgrade was all the same color. The application of the waterproofing was clearly within Upgrade's operations, even though Upgrade did not choose the color.
In Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA (15 NY3d 34 [2010]), the Court of Appeals interpreted a similar clause, which provided additional insured coverage to a construction manager with respect to liability arising out of the general contractor Regal's ongoing operations. There, unlike in Worth, the Court held that the additional insured endorsement did apply (id. at 39). One of Regal's employees - the project manager - had slipped at the work site on a floor joist that had recently been painted by the construction manager's employee. The Court held that the injury "arose out of" Regal's general contractor's operations even though the accident was allegedly caused by the construction manager's negligence (id. at 38). The Court reasoned that Regal was "factually distinct" from Worth:
"Here, there was a connection between the accident and Regal's work, as the injury was sustained by Regal's own employee while he supervised and gave instructions to a subcontractor regarding work to be performed. That the underlying complaint alleges negligence on the part of [the construction manager] and not Regal is of no consequence, as [the construction manager's] potential liability for [plaintiff's] injury ar[ose] out of' Regal's operation and, thus, [the construction manager] is entitled to a defense and indemnification according to the terms of the CGL policy" (id. at 38).
Notably, the dissenting opinion in this Court in Regal applied a narrow interpretation of the meaning of the word "operations," much like appellant does here (64 AD3d 461, 467 [1st Dept 2009][McGuire, J., dissenting])[FN2]. The Court of Appeals disagreed with the dissent's [*4]analysis and affirmed the majority's holding that the additional insured endorsement applied.
In this case, as in Regal, but unlike in Worth, there was a connection between the accident and the named insured's operations. The connection in Regal was that the person who was injured was a Regal employee who was injured on the job site, although not through any negligence of Regal. The connection here is that the plaintiff slipped and fell on a walkway that had been waterproofed by Upgrade, although her fall was not caused by any negligence on Upgrade's part. The reasoning of Regal is properly applied here even though the injured party (Ms. Schudde) was a visitor to the premises and not an employee of any party.[FN3] In both cases, there was no negligence on the part of the named insured in performing its operations, but the accident "arose out of" those operations. Thus here, as in Regal, the additional endorsement coverage applies [FN4].
Turner Constr. Co. v Am. Mfrs. Mut. Ins. Co. (485 F Supp 2d 480 [SD NY 2007], affd 341 F Appx 684 [2d Cir 2009]), where the Second Circuit applied New York law and relied on Worth, is instructive. In that case, Turner entered into a construction management consulting agreement for renovation work at a synagogue in Manhattan. Trident Mechanical Systems, Inc. (Trident) was the synagogue's heating ventilation and air conditioning (HVAC) contractor on the renovation project.
The agreement between the synagogue and Trident provided that the synagogue and Turner be named as additional insureds under Trident's insurance policies with respect to liability arising out of "your work" (id. at 484). A fire occurred at the synagogue which was started by an employee of Aris, the roofing subcontractor, which was working on the roof that had been cut out for the installation of the air conditioning units to be installed by Trident. On the date of the incident, the Aris employee was using a propane torch, which started the fire.
To recover amounts paid to the synagogue under its fire insurance policy, Wausau Business Insurance Company, as subrogee of the synagogue, brought an action against Turner, the construction manager for the renovation project; Amis, Inc., the general contractor; and Aris, the roofing contractor. At a bifurcated liability trial, the jury apportioned liability as follows: Turner, 50%; Aris, 30%; Amis, 15%, Central Synagogue, 5%; Trident, 0% (id. at 483).
A settlement was reached prior to the damages portion of the trial, and Turner paid all of the settlement amounts for each party. It then sought indemnification from Trident's insurer as an additional insured under Trident's policy. Because the jury in the tort action involving Trident, Turner and others had found that Trident was not negligent, the District Court ruled that res judicata barred Turner's indemnification action.
On appeal, Turner argued that the verdict absolving Trident of negligence in its work at the synagogue was irrelevant to the insurers' duty to indemnify Turner because the policy provided for indemnification if Turner's liability arose out of the named insured Trident's work, not simply Trident's negligent work. The Second Circuit agreed, holding that "[w]hether a party was negligent' in its performance of work is a question distinct from whether that work caused an accident or exacerbated the damages of such accident" (Turner Constr. Co. v Kemper Ins. Co., [*5]198 Fed Appx at 30). The Circuit Court remanded to the District Court for a determination as to whether Turner's liability arose out of Trident's work. Upon remand, the District Court found:
"Turner's liability for the resulting property damage at the Synagogue . . . arose out of, or was connected to, Trident's work, even though Trident was held not to be negligent. The resulting damages, for which Turner was held liable, were incident to and had connection with Trident's work, which was insured by the Policies" (485 F Supp 2d at 489-490).
Significantly, the District Court rejected the insurer's argument that cases involving a contractor's employee (as was the case in Regal) are distinguishable from those that do not when a court is interpreting an additional insured endorsement.
"[A]lthough the Defendants have sought to distinguish the subcontractor's employee's injury cases cited by Turner [ ], these cases all stand for the proposition that liability of a general contractor can arise from the non-negligent work of a subcontractor where the subcontractor's work is involved or implicated in the injury. That an injured employee is actively on the job does not change the arising out of' analysis, which focuses not upon the precise cause of the accident, as defendants urge, but upon the general nature of the operation in the course of which the injury was sustained'"(485 F Supp 2d at 489 [citation omitted]).
The Second Circuit subsequently affirmed the grant of summary judgment to Turner, citing Worth, "on the basis that Turner's liability for the fire arose out of' the work of Trident and was thus covered by insurance policies that Trident had procured" (341 Fed Appx at 686).
In sum, since the injury to the plaintiff in the underlying action here "arose out of" Upgrade's operation of painting the walkways, plaintiffs are additional insureds under the State National policy and the policy is primary in connection with the underlying action.
Accordingly, the order of the Supreme Court, New York County (Nancy M. Bannon, J.), entered July 10, 2018, which granted plaintiffs' motion for summary judgment declaring that they are additional insureds under an insurance policy issued by defendant to nonparty Upgrade, and are entitled to coverage under that policy in connection with the underlying personal injury action, and that the policy is primary, and so declared, and denied defendant's cross motion for summary judgment, inter alia, declaring that it is not obligated to defend or indemnify plaintiffs in the underlying action, should be affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Nancy M. Bannon, J.),
entered July 10, 2018, affirmed, without costs.
Opinion by Kapnick, J. All concur.
Sweeny, J.P., Richter, Kapnick, Kern, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK



Footnotes

Footnote 1:That Upgrade painted over steps and a catwalk that previously had contrasting colors, with one color, supports plaintiffs' assertion that Schudde's accident was with respect to Upgrade's "operations" as per the additional insured endorsement.

Footnote 2:The dissent posited that if the injured Regal employee had alleged only that "he tripped and fell as a result of banana peels carelessly left on the joist by an employee of [the construction manager]," it would be hard to see how the construction manager could be an additional insured under the Regal policy. The dissent further reasoned that the underlying complaint in the Regal action "cannot be distinguished from that hypothetical complaint because it . . . does not allege any conduct by Regal on the basis of which Regal's liability to [its employee] might be found" (64 AD3d at 466).

Footnote 3: See discussion of cases involving employees in Turner Constr. Co. v Am. Mfrs. Mut. Ins. Co. (485 F Supp 2d 480, 489 [SD NY 2007]), affd 341 F Appx 684 [2d Cir 2009]), where the court held that whether the plaintiff in the personal injury action is an employee actively on the job does not change the analysis.

Footnote 4: The Court of Appeals recently emphasized that there is a material difference between the phrases "caused by" and "arising out of"(Burlington Ins. Co. v NYC Tr. Auth., 29 NY3d 313, 323- 324 [2017]).